Richard E. JOHNSON and Beverly P. Johnson, His Wife, and Martin L. Pomerantz and Phyllis L. Pomerantz, His Wife, and Richard A. Wolfe and Anne F. Wolfe, His Wife

v.

John H. BINGLER, District Director of Internal Revenue.

Richard E. Johnson and Beverly P. Johnson, his wife, Appellants in No. 16826.

Martin L. Pomerantz and Phyllis L. Pomerantz, his wife, Appellants in No. 16827.

Richard A. Wolfe and Anne F. Wolfe, his wife, Appellants in No. 16828.

Nos. 16826–16828.

United States Court of Appeals Third Circuit.

Argued Jan. 18, 1968.

Decided June 5, 1968.

James C. Larrimer, Dougherty, Larrimer, Lee & Hickton, Pittsburgh, Pa., for appellants.

Ann Belanger, Dept. of Justice, Tax Division, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Jonathan S. Cohen, Attys., Department of Justice, Washington, D. C., Gustave Diamond, U. S. Atty., W. Wendell Stanton, Asst. U. S. Atty., on the brief), for appellee.

Before HASTIE, Chief Judge, GANEY, Circuit Judge, and WEINER, District Judge.

OPINION OF THE COURT

WEINER, District Judge.

Before us on this appeal are three taxpayers [1] who, while employees of the Westinghouse Electric Corporation, were participants in the Westinghouse Bettis Fellowship and Doctoral Program through which each received a stipendiary grant and leave of absence from his employer in order to research, write, and defend his Ph.D. thesis in engineering at either the University of Pittsburgh or Carnegie Institute of Technology (now Carnegie-Mellon University).

There was testimony below that the Bettis Atomic Power Laboratory, at which each taxpayer was employed before and after his academic leave of absence, is owned by the United States Government and is operated by Westing-

1. Appellants' wives are joined as nominal plaintiff-appellants by virtue of the joint income tax returns filed by them with their husbands for the years involved.

house under a "cost-plus" type of contract with the Atomic Energy Commission. Appellants' theses related to the work program of the Laboratory in the field of nuclear engineering.

Income tax was withheld from the monthly allowances received by each of the three appellants; each filed a claim for refund of this tax on the grounds that the grant was excludable from his gross income as a scholarship under Int. Rev.Code of 1954, § 117. These claims were rejected by the Internal Revenue Service, and again by a jury in the trial below.

The correctness of this determination is the subject of this appeal.

The crucial terms "scholarship" and "fellowship grant" appear in the relevant § 117 without any definition whatsoever.[2] In the absence of any guidance as to the content of these statutory concepts embodied in the Code itself, we agree with the Tax Court that

"a proper reading of the statute requires that before the exclusion comes into play there must be a determination that the payment sought to be excluded has the normal characteristics associated with the term 'scholarship.'"

Elmer L. Reese, Jr., 45 T.C. 407, 413 (1966), aff'd per curiam, 373 F.2d 742 (4th Cir. 1967). Without attempting a comprehensive definition, we can simply mention some of the more salient "normal characteristics" of such scholarships or fellowship grants that are exemplified in the situation before us.

Appellants' stipends were awarded as subsidies to full-time students, in an amount bearing an appropriate relation to each recipient's needs. Their continuance was contingent upon the participant's maintenance of the academic standards required of a candidate for a

graduate degree by the university which each appellant attended. While receiving these grants, appellants were on an academic leave of absence from their employment for the specific purpose of completing their doctoral dissertations. These are the most important positive characteristics which appellants' grants shared with scholarships generically. We turn now to the Code and the legislative history for an understanding of the distinctions with which Congress intentionally colored the kind of grant it wished excluded from gross income for internal revenue purposes.

Most notable in the legislative tax treatment of scholarships is that the Congress in 1954 was painting with a broad brush. Grants which properly qualify as scholarships are excluded from taxation in very unqualified terms by § 117(a). In the case of candidates for a degree, such as appellants before us, this exclusion is explicitly limited in the statute only as not applying

"to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or fellowship grant."

Int.Rev.Code of 1954, § 117(b)(1). The statute as it applies to degree candidates provides no ceiling for the amount that the candidate may exclude from his gross income, as long as it otherwise properly qualifies for scholarship tax treatment. This is in sharp contradistinction to the limit of $300 a month for a maximum of 36 months to which those not candidates for a degree are held. Compare § 117(b)(1) with § 117(b)(2)(B).

The legislative history also evinces unmistakably the intent of Congress to exclude from tax treatment qualifying scholarships without regard to whether they are to be considered "as income or

2. In pertinent part, § 117(a)(1) provides as follows:
   "(a) General rule.—In the case of an individual, gross income does not include—
   (1) any amount received—

   (A) as a scholarship at an educational institution (as defined in section 151 (e)(4)), or
   (B) as a fellowship grant * * *."
   26 U.S.C. § 117(a)(1).

as gifts," H.R.Rep. No. 1337, 83d Cong., 2d Sess. 15 (1954), U.S.Code Cong. & Admin.News 1954, p. 4041, as had been the test hitherto applied under the then "existing confusion," id., for which the 1954 change was an attempted remedy. The Senate Report, furthermore, carefully sets out the sequence of the thinking that went into § 117:

> "The section first states the general rule that amounts received as scholarships or as fellowship grants are excludible from gross income and then prescribes specific rules for limiting the amounts which may be excluded."

S.Rep. No. 1622, 83d Cong., 2d Sess. 17 (1954), U.S.Code Cong. & Admin.News 1954, p. 4647.

In light of the statutory language and the reports of the Congressional committees which drafted it, the dominant legislative intent evident in the scheme of § 117 is that of encouraging financial aid to students at accredited schools, and especially to candidates for degrees, through the device of limited tax relief. The further attention given by both the statute and the legislative history [3] toward limiting the exclusion only for those *not* candidates for a degree would strengthen the inference, by the canon of statutory construction that *expressio unius est exclusio alterius,* that Congress intentionally included the sole restrictions it wished to place on the excludability of scholarship stipends for degree candidates in the language of § 117(b) (1) itself.

To the sole qualification of § 117(b) (1), then, that degree candidates cannot exclude as tax-exempt scholarships any payment for services required as a condition of the grant, the Treasury Regulations purport to add two others. These would subject to taxation, in pertinent part, any stipend for studies or research which (1) "represents either compensation for past, present, or future employment services"; or which (2) subsidizes studies or research "primarily for the benefit of the grantor." Treas.Reg. 1.-117–4(c) (1)–(2) (1956).

In light of the aim explicit in the legislative history of doing away with the touchstone of compensation versus gift, we cannot say, as one court has, that "indicia of compensation" such as are suggested by the regulation are legitimate criteria for testing the excludability of an alleged scholarship, cf. Stewart v. United States, 363 F.2d 355, 357 (6th Cir. 1966). Nor can we even approve the disqualification added by Treas. Reg. § 1.117–4(c) (1) (1956) of amounts which represent "compensation for past, present, or future employment services," without more. Contra, Ussery v. United States, 296 F.2d 582, 586–587 (5th Cir. 1961). This ruling seems merely an attempt to write into the regulations a concept which was considered and intentionally rejected by the Congress which enacted the Code.

To summarize: under a fair reading of the Internal Revenue Code of 1954, § 117, in the light of the Congressional committee reports which point up the thinking of the 1954 Congress, we believe that any reasonable stipend which comes within the common understanding of what constitutes a scholarship, is paid to finance the schooling of a degree candidate, and does not fall within the limita-

---

3. H.R.Rep.No. 1337, supra at 17, U.S.Code Cong. & Admin.News 1954, p. 4042 expressed concern, in the case of non-degree candidates, lest the exclusion extend to any annual grant which, together with "any compensation received from the recipient's previous employer," exceeded 75% "of the recipient's salary in the year preceding the grant." In taxing any amount above this limit, the House committee declared: "This will tax those grants which are in effect merely payments of a salary during a period while the recipient is on leave from his regular job." Id. For this percentage exclusion the Senate committee "substituted for the 75 percent rule an exclusion of $300 per month of grants paid to individuals who are not candidates for degrees." S.Rep. No. 1622, supra at 18, U.S.Code Cong. & Admin.News 1954, p. 4648. Both committees evidently foresaw the instant problem and legislated with respect to the type of student and the amount of stipend they wished to subject to a limitation on excludability.

tion of § 117(b) (1) is excluded from gross income. To illustrate the application of this general outline, we shall take up the Government's arguments in the discussion remaining.

The first element in the Westinghouse Fellowship Program that appears to trouble the Internal Revenue Service is the fact that each grant for those recipients on educational leave was based on a percentage of the grantee's "base salary".[4] The basis on which each Westinghouse Fellowship grant was calculated was, however, not without some logic other than as what might arguably be a disguised salary payment. Scholarships are characteristically based at least partly on need, and the Westinghouse grants were calculated, perhaps generously, to give each recipient a living allowance based upon the size of his family and the standard of living to which his previous salary had accustomed him, without a sudden substantial cut in revenue. Monthly maxima were set; these ceilings do not appear to us to have been excessive or unreasonable—the one limitation most probably implicit in the otherwise unrestricted excludability of scholarships for degree candidates in § 117.

The concept and content of "scholarship" are developing ones. Fundamental in the exclusion afforded such stipends by § 117 is its encouragement toward graduate study. Without an arrangement of subsidies on a sliding scale based on prior income, employees such as appellants here would probably be hard pressed to leave work for a year to return to school to earn an advanced degree. We think the purpose of the instant fellowship program entirely consistent as concerns appellant degree candidates with the scheme of the exclusion afforded scholarships by the Internal Revenue Code of 1954, § 117. There is, moreover, as we have noted above, no ceiling to this exclusion in the statute.

Although the Senate report on § 117 did not discuss the problem of salary payments disguised as educational stipends for degree candidates, it did display concern for this problem with regard to postdoctoral students. In this connection, it notes: "Such grants may be in effect a continuing salary payment while the recipient is on leave from his regular job," S.Rep. No. 1622, supra at 18, U.S. Code Cong. & Admin.News 1954, p. 4648. The preventive response of Congress, however, was restricted to the $300 monthly limit of § 117(b) (2) (B) for nondegree candidates.

Hence the Westinghouse grants, even based as they were partly on a percentage of each recipient's prior earnings and partly on family size and need, do not seem to us for this reason to disqualify for exclusion either under the statutory language or because of any alleged failure to meet what we consider to be "the normal characteristics associated with the term 'scholarship'."

The second reason advanced by the Government for disqualifying these grants from nontaxable scholarship treatment is that the grantor, Westinghouse, in its own bookkeeping did not denominate them as such: it carried them, rather, as "indirect labor, or overhead." Deductions from the stipend checks, moreover, were regularly made for income tax and social security payments. An evident discrepancy exists between the characterization of these grants both by appellants and by the Fellowship prospectus as "stipends", on the one hand, and by the custodian of the payroll records at the Westinghouse Bettis Atomic Power Laboratory as "indirect labor", on the other.

The answer to this contention by the Government that the grantor's treatment controls, however, has already been given by this circuit in a similar case, where we recently had occasion to

4. Depending on the family status of the recipient, a Westinghouse Fellow received a stipend of 70% "of the base salary" plus "adders" up to a monthly maximum of $490 if single; 80% plus adders up to $560 monthly if married; 85% plus adders up to $595 monthly if married with one child; and 90% plus adders up to $630 if married with two or more children.

"observe and emphasize that under this regulation [§ 1.117–4(c) (2) (1956)] the determinative consideration is not the primary purpose of the grantor in subsidizing the student, but rather the primary purpose of and the primary benefit from the subsidized study."

Commissioner v. Ide, 335 F.2d 852, 855 (3d Cir. 1964) (Hastie, J.). Although the court in *Ide* was considering more particularly the taxability of the grants there in question on the grounds that the work done by the grantees was "primarily for the benefit of the grantor," in the words of Treas.Reg. § 1.117–4(c) (2) (1956); nonetheless we believe this observation equally valid as a caution against grafting an additional subjective test based on the grantor's intention onto the existing statutory language which was intended to obviate this inquiry. Accord, Chandler P. Bhalla, 35 T.C. 13, 17 (1960) (by implication), acquiesced in, 1965–1 Cum.Bull. 4.

The third element of this program to which the Internal Revenue Service objects is the commitment required by the Westinghouse Bettis Fellowship and Doctoral Programs of each participating fellow:

"that after the end of his educational leave he will assume such duties commensurate with his education and experience as may be assigned to him by Westinghouse, and will thereafter continue in the employ of Westinghouse for at least two (2) calendar years at a rate of salary commensurate with the duties assigned."

We do not agree with the Government that this commitment, in this case, is sufficient evidence that these stipends were of an essentially "compensatory nature". Compensation for the future "duties" of each grantee is to be at a "commensurate" salary, presumably without adjustment downwards to take account of the instant grant.

Assuming the above clause to be unenforceable by specific performance, we think it nonetheless apparent that contingent liability in damages for the breach of such a clause might be of substantial value in an appropriate factual situation. A significant commitment by the student in return for a grant would, of course, place that grant outside the category "scholarship", at least to the extent of the value of that commitment. For if the grantee had to barter for his stipend, giving full value for it, this arrangement would hardly serve the primary purpose of the § 117 exclusion: to encourage financial aid to education through tax relief.

In the instant situation, however, appellants' promise to return to employment with Westinghouse at an appropriate salary would subject them to no financial sacrifice. They are to be paid in accordance with their enhanced educational qualifications. Since a salary commensurate to their new duties is already inducement for them to return to their employer-grantor, appellants' additional paper commitment seems of negligible value in this case.

We of course express no opinion as to cases where the quid pro quo given by the grantee for his grant is of measurable monetary value.

Viewed in a light most adverse to appellants, their situation is still akin to that in Aileene Evans, 34 T.C. 720 (1960), acquiesced in, 1965–1 Cum.Bull. 4. There the Tax Court held petitioner's stipend excludable from her gross income under § 117, even though she was obligated either to work for her grantor after her studies or to refund the sums advanced. Although petitioner in *Evans* was not an employee of the grantor at the time she received her stipend, we do not deem this distinction material to the hypothetical question of compensation for future employment services.[5]

The last argument advanced by the Government is that appellants' studies

---

5. This we think is true on analysis, despite the cursory attempt to distinguish *Evans*

on this point, in Rev.Rul. 65–146, 1965–1 Cum.Bull. 66.

were not primarily for the purpose of educating and training each recipient in his individual capacity, but rather in his capacity as an employee of the grantor. The grants, the Government argues, would hence be proscribed by Treas.Reg. § 1.117–4(c) (2) (1956).

To decide this issue, we do not have to consider the validity of this regulation in the light of the statutory language and legislative history of § 117. For the Government's argument is one step removed from the kind of situation the regulation would reach, even assuming it to be a proper construction of the statute. A stipend for studies or research has in the past been disqualified for scholarship treatment because a grantee has performed the function of a paid employee of the grantor, e. g., Ethel M. Bonn, 34 T.C. 64 (1960); conversely, a stipend has qualified where a grantee's services "may supplement those of employees of the Institute [connected with the university grantor] but are of themselves not of primary or material benefit to the Institute * * *." Wrobleski v. Bingler, 161 F.Supp. 901, 905 (W.D.Pa.1958).

In the instant case, however, the Government contends that the grantee's research brings his stipend within the reach of Treas.Reg. § 1.117–4(c) (2) (1956), not because it was primarily of direct benefit to Westinghouse and not to the grantee, but rather because it primarily furthered the education and training of the recipient qua Westinghouse employee, and as a corollary redounded to the benefit of Westinghouse by enhancing its engineering program in the competitive market for recruits. Even assuming, arguendo, the truth of this contention and the validity of the touchstone of 'primary purpose', nevertheless such indirect advantage as is here alleged has been, and still is, beyond the scope of the regulation.

In summary, we think that the characteristics of what constitutes a scholarship or fellowship grant for the purposes of the Internal Revenue Code are far from clear. The legislative and judicial gloss provides no sure elucidation, cf. Reese, supra, 45 T.C. at 412. Compare, e. g., Woddail v. Commissioner, 321 F.2d 721 (10th Cir. 1963) (resident physician receiving residence training in neurology and psychiatry; grant for instruction held taxable) with Evans, supra (registered nurse enrolled in psychiatric nursing program on stipend from Tennessee Department of Mental Health for which she will work or to which she will refund stipend; held not taxable).

To us, the nature of the grants here involved is not such as to deprive them of the normal characteristics associated with scholarships or fellowship grants. The single most important purpose that Congress had in mind in enacting § 117 appears through the language of the statute and the Congressional committee reports as that of encouraging financial aid to studies and research, with a preference for the work of degree candidates. In the light of this overriding Congressional goal of encouraging scholarship aid and the accompanying lack of restrictions as to its amount or character in the case of degree candidates, we believe, upon due consideration, that appellants' educational grants do qualify for income tax purposes as excludable scholarships or fellowship grants.

The facts of this case were not in dispute; no question of credibility was presented; no sufficient ground for inconsistent inference of fact was left. As our previous discussion indicates, this case turned on a question solely of statutory construction, requiring only judicial exegesis. Hence the issue below should not have been submitted to the jury, see Jopek v. New York Central R.R., 353 F.2d 778, 783 (3d Cir. 1965); Kocher v. Creston Transfer Co., 166 F.2d 680, 687 (3d Cir. 1948).

The judgment of the district court will be reversed and the case remanded for proceedings not inconsistent with this opinion.