John E. QUAST and Nancy K. Quast,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 4–68 Civ. 73.

United States District Court
D. Minnesota,
Fourth Division.

Nov. 22, 1968.

Maun, Hazel, Green, Hayes, Simon & Aretz, by Albert A. Woodward, St. Paul, Minn., for plaintiffs.

Department of Justice, Tax Division, Daniel J. Dinan, Washington, D. C., for defendant.

NEVILLE, District Judge.

This is a suit for refund of income taxes paid. It is now before the court on plaintiff's motion for judgment notwithstanding or in the alternative for a new trial. The jury returned a verdict for defendant and thus denied the refund. Plaintiff[1] claims certain moneys received by him in the amount of $4,990 for the first six months of the calendar year 1964 are not includable in gross income because such constituted a scholarship or a fellowship grant. Section 117 of the Internal Revenue Code, 26 U.S.C. § 117, reads in part:

"Scholarships and fellowship grants
(a) General rule.—In the case of an individual, gross income does not include —
(1) any amount received—
(A) as a scholarship at an educational institution * *
(B) as a fellowship grant * * *."

In determining this motion, the court must construe the evidence in the light most favorable to defendant. Motions for judgment notwithstanding or alternatively for a new trial which challenge the sufficiency of the evidence admit the truth of the opponent's evidence, together with all reasonable inferences arising therefrom, and require the most favorable interpretation thereof by the court. Only if there is no substantial evidence to support the verdict can the court grant such a motion. In the court's view the above quoted portion of Section 117 controls this case and the inquiry in reality need go no farther. The court in its charge to the jury did, however, read further portions of Section 117 and several excerpts from the Regulations adopted by the Commissioner of Internal Revenue in further definition and explanation of Section 117. More will be said about this later.

It appears from the evidence that plaintiff, Dr. John E. Quast, graduated from Medical School at the University of Minnesota in 1956. He thereafter interned and then practiced for a period as a physician and surgeon at Long Prairie, Minnesota. On or about or shortly after January 1, 1961, he determined to leave his private practice and applied on January 11, 1961, to the Veterans Administration Hospital at Minneapolis, Minnesota to become a physician on its staff in the Physical Medicine Department. Thereafter, and on March 8, 1961, he applied to enter the Graduate School at the University of Minnesota as a medical fellow. He claimed at the trial that he had an intention to obtain from the University a degree of Master of Science, with a major in Physical Medicine and Rehabilitation,[2] and in its instructions to the jury the court proceeded on the theory that plaintiff was a candidate for a degree.

Dr. Kottke, the head of the Physical Medicine and Rehabilitation Department at the University of Minnesota Medical

---

1. Nancy K. Quast is a plaintiff solely because, as the wife of John E. Quast, she joined him in the filing of a joint income tax return for 1964. The term plaintiff is used herein in the singular and refers to John E. Quast.

2. Plaintiff's application to the University of Minnesota Graduate School dated March 8, 1961 (Ptf's Ex. 1) contains the following question which was answered by plaintiff: "19. Degree sought (See bulletin for conditions)—none." The next question "What is your purpose in seeking the higher degree" was left blank. As at date of trial, some four years after completion of his residency training, plaintiff still had not received any advanced degree from the University of Minnesota.

School, testified that plaintiff's application was approved by the Graduate School on April 17, 1961, and that he thereupon became eligible to enter if the appropriate funds could be found or made available. Dr. Kottke further testified that the awarding of such a degree as plaintiff claims he sought would require three years clinical experience, that is, the actual handling and treating of patients, some classroom work, some research, including the writing of a thesis and the obtaining of certain other scholastic credits.

The evidence establishes a close relationship between the staff of the University of Minnesota Medical School and the staff of the Minneapolis Veterans Administration Hospital, in that all members of that staff are faculty members in one or another capacity of the University of Minnesota Medical School, and apparently no one is on the staff of the Veterans Hospital who has not been approved by the University of Minnesota Medical School.

On June 30, 1961, some three months after application to the University of Minnesota, plaintiff Dr. Quast made a written contract with the Veterans Administration. This provided, in substance, that for a period of three years plaintiff would render medical service at the Veterans Hospital, which included examining patients, prescribing for them, conducting classes, administering drugs, admitting patients and directing technicians and rendering other services. The testimony is that Dr. Quast spent 45 hours per week in so doing.

The contract was what is known as a "Career Resident" contract as distinguished from an ordinary resident contract, the difference being that under the Career contract, Dr. Quast agreed to be employed by the Veterans Hospital at its option for a period of 24 months succeeding his three-year residency. This he has done, and is still employed by the Veterans Hospital and serves as an instructor at the University of Minnesota Medical School. For one six-month period in 1962, and for another three-month period in 1964, Dr. Quast by agreement spent full time at the University of Minnesota Hospital rather than at the Veterans Hospital. Dr. Quast did not perform any services nor do any work other than required for a degree of Master of Science in Physical Medicine.

It is the plaintiff's contention that the work he did was part of his assignment in order ultimately to claim his degree. Plaintiff was graded on his work at Veterans Hospital and credits allowed by the University of Minnesota toward a degree. There was testimony that if plaintiff's grades had not been satisfactory, the University program and the payments would have ceased. Plaintiff has now passed his Board examinations and is certified as a specialist in Physical Medicine.

Plaintiff claims that the sum of $4,990 paid him by the Veterans Administration for the first six months of 1964 should be excluded from his gross income and thus comprise non-taxable income. The government claims that the payments received by Dr. Quast were not a scholarship or fellowship, but were simply a salary. It takes the position that when Dr. Quast desired to enter the University of Minnesota as a graduate student to perfect his standing as a specialist in Physical Medicine he merely obtained a job at the Veterans Administration to help him defray expenses so that he and his family could live during the three-year period; that his salary was subject to withholding, as with any salary, for income tax, insurance and retirement, and that he accrued annual leave or vacation and sick leave as would any government employee, and received regular increases in salary as would any satisfactory salaried employee.

The government points to certain language in the contract of June 30, 1961 and other documents in evidence which it claimed demonstrated that the amount paid by the Veterans Administration was not a fellowship payment

but was in truth and in fact a salary paid in return for services.

Plaintiff's contract with the Veterans Administration contains a number of references to employment as distinguished from a fellowship. It recites for instance that plaintiff "having been accepted for specialty training * * * as a resident at the Veterans Administration Hospital * * * and for employment in the Deaprtment of Medicine and Surgery * * * as a full-time physician, Associate Grade, I desire to receive my residency training contemporaneously with my employment."

" * * * it is agreed that I shall be paid the regular salary of a full time physician in the grade at which I am appointed or to which I may be promoted * * * "

" * * * while I am rendering obligated service under this contract it is agreed that I will be paid the regular salary of a full time physician * * * and that I will be entitled to all the rights, privileges, benefits and emoluments of such a full-time physician * * * "

"In consideration of the training furnished * * * I obligate myself to remain in the employment of the Veterans Administration as a full time physician * * * if I receive more than 27 completed months * * * I will render 24 months of obligated service."

The contract contains further provisions that in the event of failure to perform "obligated service" after completing residency, certain refunds will be due the Veterans Administration as liquidated damages.[3]

An internal government memo received in evidence dated in February 1961, prior to plaintiff's application to the University of Minnesota, contains this language:

"Dr. John E. Quast has submitted the appended application * * * before definitely deciding he would like to know what salary he would be given."

Added to the memo the next day is the following:

"It would appear * * * he would be eligible for assignment to our full time staff at Associate Grade the beginning salary of which is $7,560."

Various copies of personnel action were received in evidence indicating a figure under or opposite the word "salary", the one applicable for the first half of 1964 containing the following "Basic per annum salary adjusted to $9,980 effective January 5, 1964. "Old salary rate" was shown as $9,475. An internal memo in the Veterans Administration dated January 28, 1958 defining the residency program reads in part as follows:

"Since the personnel who engage in a residency training career program are appointed under the provisions of Section 4(a), Public Law 293, in the same manner as other full-time physicians, they thus must meet the statutory requirements with respect to licensure, citizenship, graduation from an approved medical school, and completion of an internship acceptable to the Administrator. These personnel will be subject to the same regulations and procedures pertaining to leave, periodic salary step increase, in-grade promotions, etc. as any other full-time IM&S physician except that appointments in and promotions to Senior or Chief grade would not be permitted."

█ The character of the payments received by plaintiff is determined fundamentally by the usual test of the parties intent. The question is did the parties intend a scholarship or a fellowship, or in the alternative a salary.

█ It seems clear to the court that a jury well could find that plaintiff received a salary for work he was employed

---

3. Almost immediately upon completion of plaintiff's three-year residency and entering "obligated service", his salary went from $9,980 per year to $13,755.

to do and that it was not the intent of the parties, and certainly not that of the Veterans Administration that such payment should be considered as a fellowship or scholarship. The above quoted excerpts from exhibits seem clearly sufficient to have warranted the jury's finding, if not to have compelled it. It is true that the work plaintiff was doing at the Veterans Administration in tending patients was a credit toward his potential degree. Undoubtedly in many institutions of higher learning, certain vocational or other work which a student may do as an employee in commercial industry constitutes actual experience and credit is given therefor by the educational institution. Such does not necessarily make any payment received for such work a scholarship or fellowship, however.

Plaintiff contends that the remainder of Section 117, not herein above quoted, dealing with "Limitations" should permit the submission of the case to the jury in such a manner as to enable them to find that some portion, if not all, of the $4,990 received by plaintiff was a scholarship or fellowship. Section 117 (b) (1) reads as follows:

"Limitations.—

(1) Individuals who are candidates for degrees.—In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151(e) (4)), subsection (a) [above quoted herein] shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph."

■ The weakness in plaintiff's position is that it assumes as a premise that the fact finder has determined the payment to be a fellowship and not salary. Plaintiff of course urges that it is a fellowship and then argues that the jury could determine that even though a portion of what was paid did not qualify as a fellowship payment because it was payment for "teaching, research or other services in the nature of part-time employment," still to the extent that what plaintiff did was required by all candidates for a particular degree, he could have excluded a portion of the amount he received from gross income, thus constituting a portion of his payment a fellowship. The difficulty with this argument is twofold.

(1) The evidence warrants the jury in finding, and construing the evidence most favorable to the defendant it must be assumed that it did so find, that none of the payment was fellowship; thus the limitation of Subd. (b) (1) is quite immaterial because it becomes operative only if initially a finding is made that the payment is a fellowship. Since the jury found as it did on a plausible theory advanced by the evidence, the verdict must be sustained.

(2) The plaintiff produced no evidence of any standards or means by which a jury could measure or determine any apportionment, even were this the proper course. The case was tried on the theory of plaintiff's contention that the whole amount of $4,990 paid was excludable from gross income. In requested instructions, however, plaintiff did seriously ask for such an apportionment. The distinction between a Career resident and an ordinary resident, as made by the Veterans Administration, is a tenuous and insufficient distinction for this purpose.

■ Pursuant to authority conferred on the Commissioner of Internal Revenue by law, Regulations were promulgated

affecting Section 117.[4] These purport to define the terms "scholarship" and "fellowship" and to identify the scope and breadth of Section 117 exclusions from gross income. Plaintiff contends that these regulations are void and illegal as beyond the Commissioner's powers; that the Commissioner has in effect legislated, has changed the intent of Congress and the Regulations are thus invalid. The court does not subscribe to this view. Plaintiff cites Johnson v. Bingler, 396 F.2d 258 (3rd Cir. 1968) in which the court held invalid Treasury Regulation Section 1.117–4(c) (2), on the ground that it conflicted with the broad purpose of Congress in enacting Section 117 of the Code. In so holding, the Third Circuit refused to follow contrary decisions from several other courts. See Reiffen v. United States, 376 F.2d 883, 890, 180 Ct.Cl. 296 (1967); Reese v. Commissioner of Internal Revenue, 373 F.2d 742 (4th Cir. 1967) aff'g 45 T.C. 407; Stewart v. United States, 363 F.2d 355 (6th Cir. 1966); Woddail v. Commissioner of Internal Revenue, 321 F.2d 721 (10th Cir. 1963); Ussery v. United States, 296 F.2d 582 (5th Cir. 1961).

This court believes the weight of authority is the sounder view and is contrary to *Johnson*. To follow the view of *Johnson* would permit nearly any payment labeled "scholarship" or "fellowship" and not expressly within the restrictions of § 117(b) (1) to be excluded from gross income. The court does not believe that the legislative history of this section leads to that conclusion.

The Supreme Court "has many times declared that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons." Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1947).

Under the evidence in the case at bar, the jury may be presumed to

---

4. The court included the following excerpts from the Regulations in its instructions:

"§ 1.117–3 Definitions—* * *

(c) Fellowship grant. A fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research. * * *

(e) Candidate for a degree. The term 'candidate for a degree' means an individual, whether an undergraduate or a graduate, who is pursuing studies or conducting research to meet the requirements for an academic or professional degree conferred by colleges or universities. * * *

§ 1.117–4 * * * The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117: * * *

(1) * * * any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.

(2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor.

However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are coinsdered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for services. * * * Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant."

have found that the amount received by Dr. Quast was not a "reasonable stipend which comes within the common understanding of what constitutes a scholarship." Even under the rationale of the *Johnson* case, it would seem that the issue remains one for the jury not to be disturbed unless patently wrong as a matter of law. Such is the case here, the jury having found for defendant.

Perhaps a decision as to the validity of the Regulations is in reality unnecessary in the light of what has been said hereinabove. Assuming the validity of the Regulations, however, such would supply the jury an additional ground for its decision. The jury could well find that the $4,990 paid to plaintiff was paid *primarily* for the benefit of the grantor, the Veterans Administration, and represented compensation for past, present or future employment services—services subject to the direction or supervision of the grantor. Under the Regulations if the *primary* purpose was to further the education and training of the recipient, then the payment would have the characteristics of a fellowship. This was squarely a fact question and properly submitted to the jury. Certainly there was ample basis for the jury's finding against plaintiff on this point.

Plaintiff's claim that the contract with the Veterans Administration of June 30, 1964 lacks consideration is without merit. Plaintiff received additional money as a Career resident, as distinguished from an ordinary resident, in return for his promise to undertake "obligated service" thereafter if the Veterans Administration so opted. Certainly this is consideration under the traditional definition of detriment to both parties, as with any option. Even should the contract be held to lack consideration, it is difficult to see how that fact relates to the character of the payments received as fellowship or salary.

The court is satisfied that the issues of this case were adequately and fairly submitted to the jury and that its finding should not be disturbed. A separate order denying plaintiff's motion has been entered and filed.