Edward A. and Elizabeth Ballerini v. Commissioner.
Ballerini v. Commissioner
Docket No. 926-70 SC.
United States Tax Court
T.C. Memo 1970-334; 1970 Tax Ct. Memo LEXIS 27; 29 T.C.M. (CCH) 1595; T.C.M. (RIA) 70334; December 1, 1970, Filed *27 Held: Compensation received by petitioner Edward as a resident physician in obstetrics and gynecology at Gorgas Hospital, Panama Canal Zone, was compensation for services rendered for the benefit of the hospital and no part thereof was a scholarship or fellowship grant excludable from income under sec. 117(a), I.R.C. 1954. Edward A. Ballerini, pro se, P.O. Box 37, Kamuela, Hawaii. Harry Morton Asch, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined a deficiency of $645.92 in petitioners' Federal income tax for the year 1967. *28 The only issue before us is whether a stipend in the amount of $9,076, received by petitioner Edward A. Ballerini (hereinafter referred to as petitioner) during 1967 while a resident at Gorgas Hospital, Panama Canal Zone, constitutes a scholarship or a fellowship grant, $3,600 of which is excludable under section 117(a) (1), Internal Revenue Code of 1954, [1] or is compensation for services rendered to the hospital, taxable under section 61. Findings of Fact Petitioners are husband and wife, residing at Honokaa, Hawaii, at the time they filed their petition herein. They filed their joint Federal income tax return for the calendar year 1967 with the director, internal revenue service center, Philadelphia, Pa. 1596 Petitioner is a doctor, having received a degree in medicine and surgery from the University of Padua, which is located in Europe. After receiving his medical degree, petitioner was employed for one year at Monmouth Medical Center in Long Branch, New Jersey, where he served as an intern. Upon completing the intern program, petitioner was awarded the Borden *29 Award as the outstanding intern. From July 29, 1966, through June 1969, petitioner was a resident in obstetrics and gynecology at Gorgas Hospital (hereinafter referred to as Gorgas), Panama Canal Zone. The residency program participated in by petitioner consisted of 18 months in obstetrics and 18 months in gynecology. Petitioner received the following amounts from Gorgas during his 3-year residency program: July 1966 - June 1967
$ 8,705.50
July 1967 - June 1968
10,338.50
July 1968 - June 1969
11,477.00
Gorgas is a short-term, fully accredited 400-bed general hospital operated by the United States Government. It is not the only hospital in the Canal Zone but it is the general hospital and medical center for the entire Canal Zone. It is charged with the responsibility of providing a broad spectrum of medical services generally for persons connected in some way with the operation of the Panama Canal. Inasmuch as there are no private cases all of the parients of Gorgas are classified as service petients and are available for teaching purposes. Also, Gorgas is authorized to admit selected cases, which normally would not be eligible for admission, for their value *30 as teaching material. As a resident in the obstetrics-gynecology service petitioner had extensive duties, including being directly responsible under supervision of the staff physicians for the admission, treatment, and discharge of patients, and being directly responsible for the supervision and training of interns assigned to him. Also, petitioner was required to make morning and evening ward rounds Monday through Friday, and to attend all scheduled clinics, his ward duties permitting. The mission of the obstetrics-gynecology service as also set forth in the "Policies and Standard Operating Procedures of the Obstetrics & Gynecology Service" is as follows: (1) to provide the best in individual obstetric and gynecologic care for our patients and (2) to provide a comprehensive intern training program and residency training program to fulfill the requirements as outlined by the American Medical Association and the American College of Obstetrics and Gynecology. Gorgas is staffed by approximately 54 staff physicians along with approximately 16 AMA-approved rotating interns and 29 resident physicians in various fields, including obstetrics-gynecology. If Gorgas did not utilize *31 interns and residents to care for its patients, 30 to 40 additional staff physicians would be needed to properly care for the average number of patients treated at Gorgas. In 1967 the obstetrics-gynecology service of Gorgas was staffed by five staff physicians, two rotating interns, and three resident physicians. The interns and residents under staff supervision perform 90 percent of the workload of the obstetrics-gynecology service. The number of physicians exclusive of interns and residents needed to properly care for the average number of patients treated by the obstetrics-gynecology service is from eight to ten. The residents at Gorgas are not permanent employees, but do earn the same leave as other Federal employees of the Canal Zone Government and are eligible for the same sponsored life, health and accident insurance as the permanent employees, but at a higher rate. Residents do not participate in any sponsored retirement plan other than social security. The stipend received by the residents is fixed by the head of each agency of the Canal Zone Government but may not exceed the applicable maximum stipend prescribed by the Civil Service Commission. There is, however, a *32 15 percent differential between the U.S. hospital stipends paid to residents and the stipend paid to residents in the Canal Zone since the Canal Zone is considered a hardship area. The amount of the stipend also depends upon the availability of funds. It is not based upon the financial needs of the resident. When petitioner completed his internship at Monmouth Medical Center, he decided to continue his training and to specialize in obstetrics and gynecology. He selected Gorgas since it was in a desirable location and offered an excellent training program. He worked exclusively in the obstetrics and gynecology department during his entire residency program at Gorgas, working a minimum of 90 1597 hours a week. Upon completing the residency program, petitioner was not obligated to perform future services for Gorgas. The residency program was important to petitioner first of all because it taught him a field of medicine he wanted to learn and practice and secondly because upon completing the program he could identify himself as an obstetrician and gynecologist to his patients and he could be sought out for that type of work. Without this specialized training, petitioner could not *33 have held himself out as a specialist in obstetrics and gynecology. During the course of his residency program at Gorgas, petitioner became a junior Fellow in obstetrics and gynecology. After completing the residency program, petitioner was then eligible to take two examinations - one written [2] and one oral - to become a Fellow, or Board-certified, in obstetrics and gynecology, which would more or less identify him as an expert in that field of medicine. The successful completion of a residency program in obstetrics and gynecology is required to become a Fellow in obstetrics and gynecology. In the calendar year 1967 petitioner received a stipend of $9,076 from which Gorgas witheld income and social security taxes. On their 1967 joint Federal income tax return petitioners included the $9,076 as wages, but excluded $3,600 as constituting a scholarship or fellowship. In the statutory notice of deficiency respondent disallowed the exclusion on the basis that the stipend was not a scholarship or fellowship under section 117. Opinion The only *34 issue for our decision is whether a stipend in the amount of $9,076, received by petitioner during 1967 while a resident physician at Gorgas, constitutes a scholarship or fellowship grant within the meaning of section 117. Section 117(a)[3] excludes from gross income any amount received as a "scholarship" or a "fellowship grant." Section 1.117-3(a), Income Tax Regs., defines a "scholarship" as "an amount paid or allowed to, or for the benefit of, a student, whether an undergraduate or a graduate, to aid such individual in pursuing his studies." The term "fellowship grant" is defined in section 1.117-3(c), Income Tax Regs., as "an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research." *35 If the payment represents "compensation for past, present, or future employment services" or enables the recipient "to pursue studies or research primarily for the benefit of the grantor," the payment is not an amount received as a scholarship or a fellowship grant. Sec. 1.117-4(c), Income Tax Regs.; Bingler v. Johnson, 394 U.S. 741 (1969). Thus, we must determine "the raison d'etre of the payment - was it to further the education and training of the * * * [petitioner] or was it, in reality, payment for services which directly benefited * * * [Gorgas]?" Elmer L. Reese, Jr., 45 T.C. 407, 410 (1966), affirmed per curiam 373 F. 2d 742 (C.A. 4, 1967). As a general hospital, Gorgas is charged with the responsibility of providing a broad spectrum of medical services generally for persons connected in some way with the operation of the Panama Canal. While it is not the only hospital in the Canal Zone, it does serve as the general hospital and medical center for the entire Canal Zone. As such, there can be no question but htat its first objective is the care and treatment of its patients. In discharging its responsibility, Gorgas utilizes the *36 services of inters and residents, including petitioner, who were participating in AMA-approved training programs offered by Gorgas, in addition to its full-time staff physicians. It is clear that had Gorgas not utilized interns and residents to care for and treat its patients, Gorgas would have 1598 had to hire approximately 40 additional staff physicians to discharge its responsibility to render medical services in the Canal Zone. In the obstetrics-gynecology department, where petitioner worked exclusively during his residency program, three to five additional staff physicians would have been required if interns and residents were not utilized. In fact, the needs of Gorgas as to patient care are a factor in determining the number of intern and resident positions available at Gorgas each year. As a resident in the obstetrics-gynecology service petitioner had extensive duties, including being directly responsible, under supervision of the staff physicians, for the admission, treatment, and discharge of obstetrical and gynecology patients. Also, petitioner was directly responsible for the supervision and training of interns assigned to him. Moreover, it is noteworthy that petitioner *37 was required to attend all scheduled clinics, but only if his ward duties permitted. Thus, we think it clear that petitioner was primarily employed by Gorgas to care for and treat its patients and that the stipend received by petitioner was compensation for valuable services rendered for the benefit of Gorgas. In addition to the above-enumerated facts, we also find support for our conclusion in the financial aspects of petitioner's employment. The amount of petitioner's stipend was not based upon his financial need, as is usually customary with scholarship and fellowship grants, but rather was based upon similar hospital-paid stipends in the continental United States with a 15 percent differential for U.S. citizens who are heads of household. Moreover, Federal income and social security taxes were withheld from the payments made to petitioner. While withholding is alone not determinative, Chander P. Bhalla, 35 T.C. 13, 17-18 (1960), it is not normally done in the case of a scholarship or fellowship grant. Petitioner also received fringe benefits that the permanent employees of the Canal Zone Government receive. These financial arrangements between petitioner and Gorgas *38 are certainly indicative to us that the payments were in fact compensation for services which directly benefited Gorgas and were not payments primarily made to further the education and training of petitioner. See Irwin S. Anderson, 54 T.C. 1547 (1970). We are not unmindful, however, that by participating in the obstetrics-gynecology residency program at Gorgas petitioner did further his education and training in that he did receive specialized training in obstetrics and gynecology and that upon completion of the program he could hold himself out as an obstetrician and gynecologist. Nor are we unmindful of the fact that the successful completion of a residency program in obstetrics and gynecology is required for a physician to be certified by the American Board of Obstetrics and Gynecology, Inc., as a Fellow in obstetrics and gynecology. However, as we stated in Aloysius J. Proskey, 51 T.C. 918 (1969): There can be no serious doubt that work as a resident physician provides highly valuable training, particularly in preparing for specialties in the various fields of medicine. Yet virtually all work as an apprentice, whether in medicine or law, carpentry *39 or masonry, provides valuable training. Nothing in section 117 requires that an amount paid as compensation for services rendered be treated as a nontaxable fellowship grant, merely because the recipient is learning a trade, business, or profession. Whatever training petitioner received during the years of his residency - and we do not deny that it was substantial - was merely "incidental to and for the purpose of facilitating the raison d'etre of the Hospital, namely, the care of its patients." Ethel M. Bonn, 34 T.C. 64, 73 (1960); * * * In arguing that the primary purpose of residency program in which he was engaged was to further his education and training, petitioner relies on the fact that the stated mission of the obstetrics-gynecology service is (1) to provide the best care for its patients and (2) to provide a comprehensive residency training program. Petitioner points out that the training received is so intertwined with the care of patients that the two cannot be separated. In Quast v. United States, 293 F. Supp. 56 (D.C. Minn., 1968); affd., 428 F. 2d 750 (C.A. 8, 1970), the District Court noted in pertinent part: Undoubtedly in *40 many institutions of higher learning, certain vocational or other work which a student may do as an employee in commercial industry constitutes actual experience and credit is given therefor by the educational institution. Such does not necessarily make any payment received for such work a scholarship or fellowship, however. Here, the fact that petitioner could not have received the training in obstetrics and 1599 gynecology without caring for and treating patients is not the crucial factor. To the contrary, it is the fact that Gorgas compensated petitioner for the services he rendered for the benefit of Gorgas. See Ethel M. Bonn, 34 T.C. 64 (1960); Woddail v. Commissioner, 321 F. 2d 721 (C.A. 10, 1963), affirming a Memorandum Opinion of this Court; Aloysius J. Proskey, supra; Quast v. United States, supra; Wertzberger v. United States, 315 F. Supp. 34 (D.C. Mo., 1970); Irwin S. Anderson, supra; and Kwass v. United States, - F. Supp. - (D.C.Mich. 1970).[4] All of the above-cited cases are indistinguishable in principle from the instant case. *41 Accordingly, for the reason set forth above and on the authority of the abovecited cases, we hold that the stipend received by petitioner during 1967 is not a scholarship or fellowship grant within the meaning of section 117, but is compensation for services rendered, includable in gross income under section 61. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Petitioner took and passed the written examination given by the American Board of Obstetrics and Gynecology, Inc., on June 23, 1969.↩
3. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule. - In the case of an individual, gross income does not include - (1) any amount received - (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or (B) as a fellowship grant, including the value of contributed services and accommodations; (2) any amount received to cover expenses for - (A) travel, (B) research, (C) clerical help, or (D) equipment, which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.↩
4. See also, Austin M. Katz, T.C. Memo. 1970-116; Marvin Flicker, T.C. Memo. 1970-252; and Janis Dimants, Jr., T.C. Memo. 1970-257↩.