C. DAVID HAMSHER and MARY JANE HAMSHER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hamsher v. Commissioner
Docket Nos. 415-78, 2635-79.
United States Tax Court
T.C. Memo 1981-141; 1981 Tax Ct. Memo LEXIS 599; 41 T.C.M. (CCH) 1160; T.C.M. (RIA) 81141; March 26, 1981. *599 Held, no part of the payments received by petitioner as a resident in a hospital are excludable from gross income as a scholarship or fellowship grant under sec. 117, I.R.C. 1954. Thomas L. Ledbetter and Marc A. Zaid, for the petitioners. Mark E. Kropiewnicki, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION
*600 DRENNEN, Judge: In these consolidated cases respondent determined deficiencies in petitioners' income taxes for the years 1975 and 1976 in the amounts of $ 909.40 and $ 1,146.11, respectively. The sole issue for decision for both years is whether $ 3,600 of the remuneration received by petitioner C. David Hamsher from Bryn Mawr Hospital as a resident is excludable from petitioners' income as a scholarship or fellowship grant under section 117 of the Internal Revenue Code of 1954. FINDINGS OF FACT The stipulated facts are so found. Petitioners are husband and wife who at the time of filing of the petition in each case resided in Bryn Mawr, Pa. They filed joint income tax returns for both 1975 and 1976, using the cash receipts and disbursements method of accounting. Since the sole issue herein concerns only C. David Hamsher, the term "petitioner" will hereafter refer solely to petitioner C. David Hamsher. Petitioner received his medical degree in 1974. From 1974 through 1977, petitioner undertook a residency in internal medicine at the Bryn Mawr Hospital (hereinafter the hospital) in Bryn Mawr, Pa. Such a residency is one of the prerequisites *601 for qualification in internal medicine by the American Board of Internal Medicine. Petitioner was not a condidate for a degree during 1975 or 1976. Petitioner's first-year residency (formerly internship) at the hospital began July 1, 1974, and ended June 30, 1975. Satisfactory completion of a first-year residency is necessary to secure a license to practice medicine in Pennsylvania. Petitioner received his Pennsylvania licensure in 1975 upon passing the National Board Examination. Petitioner's second-year residency began July 1, 1975, and ended June 30, 1976; his third-year residency began July 1, 1976, and ended June 30, 1977. Petitioner's W-2 Forms from the hospital for 1975 and 1976 reflect wages, tips, and other compensation in the amounts of $ 11,256.71 and $ 12,283.36, respectively, all of which represents the amount he received under the terms of appointment at the hospital. The hospital withheld Federal, State, and FICA taxes from said amounts. The W-2 Forms indicate the petitioner was covered by a qualified pension plan, etc. Petitioner entered into a 1-year contract with the hospital starting on July 1 of each of the years 1974, 1975, and 1976. The first-year *602 contract was entitled "Internship Contract," and the second- and third-year contracts were entitled "Contract For Post-Doctoral Training." All were form contracts, similar in content, providing for salary, board, living quarters or housing allowances, free laundry, insurance paid for by the hospital, vacation and sick leave with pay, and restrictions on the individual's engaging in private practice outside the hospital or charging fees for services rendered within the hospital. The first paragraph of the "General Provisions" stated that the hospital "declares (1) that the primary purpose of the program is educational." During his residency at the hospital the tasks performed by petitioner included the following: (a) Seeing out-patients, seeing in-patients, and making rounds; (b) Teaching; (c) Supervising and reviewing the diagnoses, orders, and various work of junior residents, interns, and medical students; (d) Writing treatment orders; (e) Taking patient histories and conducting physical examinations; (f) Administering emergency care while on call; (g) Evaluating patients and recommending care to the attending physicians; (h) Writing routine management orders on *603 patients; (i) Performing vena punctures; (j) Implementing treatment orders of referring physicians; (k) Completing death certificates; (l) Assessing and diagnosing patients; (m) Working on ward service. Petitioner's hours of duty during 1975 and 1976 were 8:00 A.M. to 6:00 P.M., Monday through Friday. Additionally, petitioner was required to work various nights and weekends on a rotating basis. Saturday duty hours were 8:00 A.M. to Noon. Night duty ran from 5:00 P.M. to 8:00 A.M. Petitioner was expected to be within the hospital while on duty and was required to be signed out to another resident if he had to leave during his duty hours. Such absences also had to be cleared with the acting chief resident if over 30 minutes in length. The amount paid to petitioner by the hospital was not based upon his financial need; rather the amount was determined by the year of his residency. Petitioner's salary under the three contracts was $ 8,200, $ 12,750 and $ 13,400, respectively. The permanent staff of the hospital could not have performed all the services performed by the residents. These services would have to be done by different individuals. The hospital was primarily *604 concerned with the health and care of its patients. Petitioner reported the entire amount received from the hospital as income on both his 1975 and 1976 returns but claimed an itemized deduction of $ 3,600 on each return as an "educational stipend" under section 117 of the Code. Respondent disallowed the deductions for the reason that petitioner did not establish that the amounts he received from the hospital were scholarship or fellowship grants instead of compensation for services rendered. [1]
OPINION Section 117(a)(1) of the 1954 Code allows an exclusion from gross income of any amount received as a scholarship at an educational institution or as a fellowship grant; section 117(b)(2)(B) limits the exclusion to $ 3,600 per year for recipients who are not candiates for a degree. While there is no statutory definition of "scholarship" or "fellowship grant," section 1.117-4(c), Income Tax Regs., provides that any amount paid or allowed to an individual *605 to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payments for services which are subject to the direction or supervision of the grantor, or paid or allowed to an individual to pursue studies or research primarily for the benefit of the grantor, shall not be considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117. This regulation was upheld by the Supreme Court in Bingler v. Johnson, 394 U.S.741 (1969), in which the Court concluded that an amount received as compensation for services was not a scholarship or fellowship grant within the intendment of section 117(a)(1). In upholding the regulations the Supreme Court did not engage in an abstract weighing and balancing of the purposes of the payments at issue, but rather took a common-sense approach. Adams v. Commissioner, 71 T.C. 477, 484 (1978). That approach was explained in Hembree v. United States, 464 F.2d 1262, 1265 (4th Cir. 1972), which involved payments to a hospital intern, as follows: In considering and sustaining the validity of Treasury *606 Regulation 117-4(c) * * *, the Supreme Court bypassed discussion of the "primary purpose" dialogue and bluntly stated that "the definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no strings' educational grants, with no requirement of any substantial quidproquo from the recipients." The clear import of this language is that if there is any substantial quidproquo, i.e., compensation for services, the payments cannot qualify for exclusion from income as "fellowship" funds. In the wake of Bingler, the courts have uniformly held that payments such as those here under consideration are not excludable. See Wertzberger v. United States, 441 F.2d 1166 (8 Cir. 1971), aff'g. 315 F.Supp. 34 (W.D. Mo. 1970); Quast v. United States 428 F.2d 750 (8 Cir. 1970), aff'g. 293 F.Supp. 56 (D.C. Minn. 1968); Tobin v. United States, 323 F.Supp. 239 (S.D. Tex. 1971); Kwass v. United States, 319 F.Supp. 186 (E.D. Mich. 1970). *607 The factual circumstances of petitioner's residency at the hospital are not significantly different from those existing in a myriad of other cases involving payments to medical residents and interns which have been found to be compensation for services and, thus, not excludable under section 117. See, for e.g., Birnbaum v. Commissioner, 474 F.2d 1339 (3d Cir. 1973), affg. a Memorandum Opinion of this Court; Hembree v. United States, supra; Adams v. Commissioner, supra; Weinberg v. Commissioner, 64 T.C. 771 (1975); Rosenthal v. Commissioner, 63 T.C. 454 (1975). No grounds exist for engaging in a lengthy discussion of those facts, nor for reaching a different result thereon that reached in the cited cases. Suffice it to say, as set forth in the Findings of Fact, petitioner performed extensive and, we believe, valuable services as a resident at the hospital. Considering the varied services performed by petitioner and the hours he worked, we believe it cannot be seriously questioned that the services significantly contributed to the quality of care which the hospital provided to its *608 patients. The hospital's permanent staff could not have performed the same services as provided by residents. Petitioner contends that his services were not valuable because the hospital's permanent staff together with the other physicians who attended patients at the hospital could have provided the same services as provided by residents. Even if true, it does not negate the value of the services provided by residents such as petitioner. See Weinberg v. Commissioner, supra at 778. Petitioner's attempt to characterize the services rendered, and the patient benefit derived therefrom, as merely incidental to his training is not supported by the record. It is not disputed that the performance of the services was an integral part of petitioner's training in his medical speciality and that the successful completion of the residency was a prerequisite for qualification in internal medicine by the American Board of Internal Medicine. These facts, however, do not support a conclusion that the patient benefit from petitioner's services was merely incidental. As previously noted, we believe petitioner's services were valuable in providing quality care to the hospital's *609 patients. In addition to the nature of the services performed, the nature of the payments in question lead to the conclusion that payments were compensation rather than a fellowship. The payment amounts were geared to petitioner's experience as a resident, not to his financial need. See and compare, Bailey v. Commissioner, 60 T.C. 447 (1973). Petitioner also received paid vacation and sick leave, insurance, and other benefits indicative of an employment relationship. Anderson v. Commissioner, 54 T.C. 1547 (1970). In sum, whether the "primary purpose" test of section 1.117-4(c), Income Tax Regs., or the "quid pro quo" test of Bingler v. Johnson, supra, is applied, it is clear that petitioner was being paid to work rather than study and it makes no difference that he derived substantial benefits from his residency. The fact that the various contracts signed by petitioner state that the primary purpose of the residency program was educational does not alter our conclusion. Not only is such statement not binding on us, *610 it is also not particularly relevant. The key question is the purpose for which petitioner was paid, not the purpose of the program itself. Cf. Hembree v. United States, supra.The payments do not qualify as a scholarship or fellowship grant and are not excludable under section 117(a). Decisions will be entered for the respondent. Footnotes
1. The parties both recognize that the issue is one of exclusion from gross income rather than a deduction.↩