EDWARD A. AND SUZANNE M. JAMIESON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2182–67. Filed January 23, 1969.

*Michael L. Cook*, for the petitioners.
*Ralph V. Bradbury, Jr.*, and *Harold Friedman*, for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency of $222.43 in petitioners' Federal income tax for the year 1964. The only issue for decision is whether amounts received by petitioner Suzanne M. Jamieson from the University of Texas are excludable from her gross income under section 117, I.R.C. 1954.[1]

FINDINGS OF FACT

Some of the facts were stipulated and are found accordingly.

Edward A. Jamieson and Suzanne M. Jamieson (herein referred to as petitioner), husband and wife filed their joint Federal income tax return for the calendar year 1964 with the district director of internal revenue at Austin, Tex. At the time of the filing of the petition herein, they were legal residents of Austin, Tex.

In September 1964, petitioner enrolled in the University of Texas (sometimes referred to herein as the university) Graduate School, Department of Romance Languages, as a candidate for a Ph. D. degree in French. She had previously received an appointment from the university as a teaching assistant for the academic year extending from September 1964 through May 1965. During the fall semester of 1964,

---

[1] All statutory references are to the Internal Revenue Code of 1954.

petitioner completed 6 semester hours of course work in French literature and, as a teaching assistant, taught four sections of conversational French in the Department of Romance Languages.

In teaching each biweekly section, petitioner had complete charge of the class and otherwise functioned as a regular instructor. During the portion of the school year falling within the taxable year in issue, petitioner's classes were upon three occasions supervised by professors in the Romance Languages Department who discussed teaching methods with petitioner and submitted reports of her performance to the head of the department. In her capacity as a teaching assistant, petitioner received during this period four monthly payments of $277.78, or a total of $1,111.12. As in the case of all other teaching assistants, she received no hours of credit toward her Ph. D. degree for this work.

There are at least four categories of student assistance at the University of Texas. "Fellowships and scholarships," as the terms are used by the University, are granted as awards on the basis of merit with no requirement of services. State funds for such awards are made by special appropriation and may not be transferred for use in other categories of the University budget. A second category is designated as "traineeships" and is distinguished by its basic objective to provide students the opportunity for free-time pursuit of study and research. A third category is that of "research assistantships," broadly encompassing all employment for which payment is made through the research budget of the University. Petitioner was classified in the fourth category of student assistance, "teaching assistantships," which is essentially a teaching services position. A student cannot hold both a "fellowship" or a "scholarship" and a "teaching assistantship" at the same time.

Teaching assistants at the University of Texas are members of the staff, subject to the regulations and employment policies generally applicable to University employees, and are paid out of the nontransferable salary portion of the resident instruction budget. The University administration considers teaching assistants to be employees of the University and expects that they will render full services for the amounts paid to them. A certification that services were rendered is required before payments may be approved. The amount paid to teaching assistants, who generally are allowed to pursue half-time loads, is somewhat less than the amount normally paid to instructors for an equivalent amount of teaching. There is a formal provision for advancing teaching assistants on the basis of teaching assistantship experience. Deductions pertaining to Federal income tax, old age survivor's insurance, and teacher retirement are withheld by the

University from amounts paid to teaching assistants but not to those students holding "scholarships" or "fellowships."

Yearly the University of Texas anticipates the number of students that will enroll, then determines the number of teaching positions required to accommodate them. Generally there is an insufficient number of instructors to satisfy the need, so the University grants teaching assistantships to the best-qualified graduate students. The number of teaching assistants, therefore, is ultimately dependent upon the ratio of other faculty members to the total student enrollment and not upon the number of qualified graduate students in need of financial aid.

The University of Texas did not impose in 1964 a teaching assistantship requirement or a minimum teaching requirement on every graduate student who pursued a Ph. D. degree. As a practical matter, it could not have done so because of the large excess of graduate students over the available number of teaching assistantship positions and the inadequacy of available funds. During the fall semester of 1964, there were 3,333 graduate students at the University of Texas. Of these, approximately 574 held teaching assistantships, 800 held research assistantships, 65 held fellowship grants, and 4 held scholarship grants.

Languages at the University of Texas are taught by the "oral-aural" method which emphasizes the conversational aspects. A considerable amount of practice and supervision is required before a person becomes proficient in utilizing this method of instruction. Consequently, the Romance Languages Department places greater emphasis upon teaching assistantships than some other departments. Teaching experience is not a formal prerequisite to a Ph. D. in a romance language, but students in the department are often counseled that they should do some teaching. The selection and appointment of teaching assistants at the University of Texas is a function of the individual departments, such as the Romance Languages Department, as a part of their overall teaching function. However, the Graduate Studies Committee, an entirely separate body with distinct policies, has general authority over all graduate students and makes the final decisions with respect to the awarding of degrees. Graduate degrees are sometimes conferred upon students who have expressed an intention to enter the teaching profession but who have had no supervised teaching experience at the University.

Respondent determined that no portion of the $1,111.12 received by petitioner from the University of Texas in 1964 is excludable from her gross income under section 117.

## OPINION

We must decide whether amounts paid by the University of Texas to petitioner in 1964 are excludable from her gross income under

section 117 [2] as amounts received as a scholarship or fellowship grant. Petitioner argues principally that the amounts in issue fall within the the broad meaning Congress intended to give the terms "scholarship" and "fellowship grant," without reference to section 1.117–4(c) (2), Income Tax Regs.,[3] which, it is contended, places an unwarranted restriction on such meaning. Alternatively, petitioner argues that the primary purpose of the payments was to further her education. Respondent contends that petitioner's teaching assistantship does not constitute a fellowship within the provisions of section 117 because the payments were made to compensate her for services rendered. Respondent contends, alternatively, that if the assistantship is held to constitute a "fellowship," no exclusion should be allowed as a result of the limitation of section 117(b) (1).

In order to exclude a payment under section 117, a taxpayer must preliminarily establish that the payment has the "normal characteristics associated with the term 'scholarship.'" *Elmer L. Reese, Jr.*, 45 T.C. 407, 413 (1966), affirmed per curiam 373 F. 2d 742 (C.A. 4, 1967) ; *Stephen L. Zolnay*, 49 T.C. 389 (1968). Unfortunately, the term is not defined in the Code, and respondent's regulations are at best unclear

---

[2] SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS.
    (a) GENERAL RULE.—In the case of an individual, gross income does not include—
        (1) any amount received—
            (A), as a scholarship at an educational institution (as defined in section 151(e) (4) ),
    or
            (B) as a fellowship grant,
including the value of contributed services and accommodations ; and
        (2) any amount received to cover expenses for—
            (A) travel,
            (B) research,
            (C) clerical help, or
            (D) equipment,
which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.
    (b) LIMITATIONS.—
        (1) INDIVIDUALS WHO ARE CANDIDATES FOR DEGREES.—In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151(e) (4) ), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.
[3] Sec. 1.117–4 Items not considered as scholarships or fellowship grants.
The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117 :
    \*        \*        \*        \*        \*        \*        \*
    (c) *Amounts paid as compensation for services or primarily for the benefit of the grantor.*
(1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.
    (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor.

as to its salient characteristics.[4] Nevertheless, consideration of the circumstances surrounding the payments to petitioner leads us to the conclusion that they were not amounts "received as a scholarship * * * or as a fellowship grant" within the meaning of section 117.

Unlike a scholarship or a fellowship, the payments to petitioner as a teaching assistant were not based upon her financial need, but were made only for services actually rendered for which no academic credit was given, and were paid to her in her capacity as an employee subject to the same regulations as all other University employees. In addition, teaching assistantships were awarded not upon the basis of the number of qualified graduate students in need of financial assistance but upon the number of unfilled teaching positions at the University. Although not conclusive, the separate treatment accorded teaching assistants and the holders of scholarships and fellowships by the University in its administration and by the State legislature in formulating the budget is of some weight in our determination. In reaching this conclusion, we do not question that petitioner received some educational benefit from her experience as a teaching assistant. We simply do not find a sufficient number of other "normal characteristics" of a scholarship.

Our decision would be the same even if we were to conclude otherwise as to the nature of the payments. It is clear from this record that the entire amount paid to petitioner represented payment for teaching required as a condition to its receipt within the limitation of section 117(b)(1). We have found as a fact that the amounts paid petitioner were somewhat lower than those received by instructors at the University who performed essentially the same functions. Section 1.117-2(a)(1), Income Tax Regs.,[5] provides *inter alia:* "Pay-

---

[4] The "primary purpose" test of the regulations (sec. 1.117-4(c)(2)) has been declared valid by the Court of Appeals for the Fifth Circuit in *Ussery* v. *United States,* 296 F. 2d 582 (C.A. 5, 1961), but has been seriously questioned by the Court of Appeals for the Third Circuit in *Johnson* v. *Bingler,* 396 F. 2d 258 (C.A. 3, 1968), certiorari granted Nov. 18, 1968, in which sec. 1.117-4(c)(1) of the regulations was expressly held invalid. Both courts agree, however, that in applying sec. 117 a threshold inquiry must be made whether the payments may be classified generically as a scholarship. We have found it unnecessary to consider the validity of the "primary purpose" test in the disposition of this case. See *Stephen L. Zolnay,* 49 T.C. 389 (1968) ; cf. *Kenneth J. Kopecky,* T.C. Memo. 1968-215, and *Donald R. DiBona,* T.C. Memo. 1968-214.

[5] Sec. 1.117-2 Limitations.

(a) *Individuals who are candidates for degrees*—(1) *In general.* Under the limitations provided by section 117(b)(1) in the case of an individual who is a candidate for a degree at an educational institution, the exclusion from gross income shall not apply (except as otherwise provided in subparagraph (2) of this paragraph) to that portion of any amount received as payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or fellowship grant. Payments for such part-time employment shall be included in the gross income of the recipient in an amount determined by reference to the rate of compensation ordinarily paid for similar services performed by an individual who is not the recipient of a scholarship or a fellowship grant. A typical example of employment under this subparagraph is the case of an individual who is required, as a condition to receiving the scholarship or the fellowship grant, to perform part-time teaching services. A requirement that the individual shall furnish periodic reports to the grantor of the scholarship or the fellowship grant for the purpose of keeping the grantor informed as to the general progress of the individual shall not be deemed to constitute the performance of services in the nature of part-time employment.

ments for such part-time employment shall be included in the gross income of the recipient in an amount determined by reference to the rate of compensation ordinarily paid for similar services performed by an individual who is not the recipient of a scholarship or a fellowship grant." We think the entire amount paid to petitioner in 1964 by the University of Texas falls within the limitation of section 117(b)(1).

The only contention made by petitioner with respect to the applicability of section 117(b)(1) and section 1.117-2, Income Tax Regs., is that the services rendered by her are excepted from the overall limitation provisions because they "are required of all candidates (whether or not recipients of scholarship or fellowship grants) for a particular degree as a condition to receiving such degree." On this record petitioner has failed to sustain her burden of proving this contention. She does not deny, and we have found as a fact, that the University of Texas, and the Department of Romance Languages in particular, had no formal requirement that teaching or other services be performed as a condition to receiving any graduate degree. She contends, however, that counselors within the Romance Languages Department led students to believe that, as a practical matter, teaching experience was necessary before the University would favorably consider awarding them a graduate degree.

It should be noted that the Graduate Studies Committee, a separate body with policies different from those of the various departments, has the ultimate authority in the awarding of degrees. On the other hand, the Romance Languages Department is concerned primarily with securing adequate instruction for its students. In recommending teaching assistantships to some of its graduate students, the department was clearly fulfilling its primary function. Petitioner has failed to prove that *all* candidates for graduate degrees in the department were told of a teaching requirement or that *all* recipients of graduate degrees in that field did, in fact, perform some services of that nature (if, indeed, such a showing would be sufficient in the absence of a formal university policy). At best, the evidence indicates that for those students who intend to enter the teaching profession, some supervised teaching experience would be of aid to the Graduate Studies Committee in evaluating their qualifications for graduate degrees. The fact remains, however, that graduate degrees are sometimes awarded by the University to such students who have done no teaching at all.

Accordingly, we hold that the amounts received by petitioner from the University of Texas do not qualify as excludable fellowship grants under section 117, but are taxable as compensation for services rendered as a teaching assistant.

*Decision will be entered for the respondent.*