Robert N. Worthington and Svaja V. Worthington v. Commissioner.
Worthington v. Commissioner
Docket No. 3378-71.
United States Tax Court
T.C. Memo 1972-111; 1972 Tax Ct. Memo LEXIS 146; 31 T.C.M. (CCH) 447; T.C.M. (RIA) 72111; May 11, 1972, Filed Robert N. Worthington, pro se, 418 Princeton Dr. S.E., Albuquerque, N. Mex. Thomas N. Ingoldsby, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1968 in the amount of $552.38. The issue for decision is whether $2,700 received by petitioner Svaja V. Worthington as a teaching assistant at the University of New Mexico during the calendar year 1968 is excludable *147 from petitioners' gross 448 income under the provisions of section 117, I.R.C. 1954. [1]
Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife who resided in Albuquerque, New Mexico at the date of the filing of their petition in this case, filed a joint Federal income tax return for the calendar year 1968. Svaja V. Worthington (hereinafter referred to as petitioner) graduated from the University of Illinois with a B.A. degree in English in June 1965. She was a practice teacher as an undergraduate student at the University of Illinois and was certified upon her graduation to teach in secondary schools in Illinois. In September 1965, petitioner enrolled as a graduate student in English at the University of New Mexico and received a Master's degree in English from that university in June 1967. During the school years 1965-1966 and 1966-1967, while working on her Master's degree, petitioner was a graduate assistant in the English Department at the University of New Mexico. As a graduate assistant, petitioner tutored students in Freshman English and *148 under the supervision of a professor in the English Department conducted seminars with students who were enrolled in a large lecture class but would meet regularly to discuss the material covered by the lectures. In September 1967 petitioner entered a program of studies at the University of New Mexico leading to a Ph.D. degree in English. She remained in this program during the school years 1967-1968, 1968-1969, and 1969-1970. On May 2, 1967, petitioner received notification from the president of the University of New Mexico advising her that after consultation with appropriate university authorities, it had been determined that her appointment status would be teaching assistant in English from September 30, 1967 to June 30, 1968, at a total salary of $2,700 for 9 months' services, payable in 10 monthly installments of $270 each month. The letter further stated that if "this contract is acceptable, please sign and return the last two copies to the Office of the Academic Vice President." On May 14, 1968, petitioner received a similar notification from the president with respect to her appointment as "Teaching Assistant in English Part-time" from September 1, 1968 to June 30, 1969 at *149 a total salary of $2,700 for 9 months' services, payable in 10 monthly installments of $270 each. Petitioner was a Teaching Assistant in English at the University of New Mexico for the school year 1969-1970 also. During the calendar year 1968 petitioner was paid $2,700 as a teaching assistant at the University of New Mexico. The university withheld on the amount paid to petitioner $284.20 of Federal tax and $20.74 of State tax. A teaching assistant at the University of New Mexico is a graduate student who has a Master's degree and is making satisfactory progress toward a Ph.D. degree. Teaching assistants in the English Department at the University of New Mexico teach four sections of Freshman English per school year which are divided into two sections in the fall semester and two sections in the spring semester. Each section meets 3 hours a week so that a teaching assistant actually teaches 6 hours a week during the school year. During the entire time she was a teaching assistant at the University of New Mexico, petitioner taught four sections of Freshman English per school year. During the school years 1967-1968 and 1968-1969, a teaching assistant who was teaching Freshman English *150 at the University of New Mexico was the primary teacher of the section and conducted the class entirely on his own with no supervision at all from the English Department other than being provided with information or a syllabus covering the subject matter to be taught. There is in the State of New Mexico a Board of Educational Finance which deals with financing of universities, colleges, and certain special schools operated by the State of New Mexico. The various institutions place budget requests with the Board of Educational Finance and these requests are analyzed and sometimes adjusted by the Board and then submitted to the executive and legislative branches of the government in the State of New Mexico with a recommendation for their adoption. Generally, the legislature makes no independent review of the anticipated needs and budget requests of the colleges or 449 universities operated by the State of New Mexico but relies on the analysis made by the Board of Educational Finance in making its appropriations. In preparing the budget for the University of New Mexico, the Board of Educational Finance in conjunction with the administration officials and the Board of Regents of *151 the University would arrive at a recommended appropriation for recommendation to the legislature, breaking down the budget into various segments. One segment of the budget would be the instructional budget; another segment would be on research; another, a segment for student aid; another, the administrative budget; and in certain institutions various special categories. At the University of New Mexico a student with a Master's degree is eligible for various types of financial aid including fellowships, teaching assistantships, and loans. The budget for the University of New Mexico under the segment dealing with the student aid program included the allowance for scholarships, loans, graduate fellowships, federally financed educational opportunity grants, work-study funds, and certain other related types of funds. This segment of the budget did not include graduate assistantiships or teaching assistants. The instructional segment of the budget of the University of New Mexico included the amount budgeted for teaching assistants. The primary criteria used by the Board of Educational Finance in determining how many teaching assistants would be provided for the instructional budgets of *152 the University of New Mexico was the projected enrollment at the University of New Mexico for the year for which the budget was being made. The projected enrollment is made at the various levels of Freshmen and Sophomore and upperclassmen enrolled and based on the projections, the staff necessary to handle the projected enrollment including various levels of faculty and teaching assistants, is made. After determining the staffing necessary, including the number of teaching assistants needed, the average annual salary allowance for each position is arrived at to determine the total instructional budget of the University for the coming year. If this budget is approved, the university may make small deviations from the approved budget but basically is required to follow the budget and use instructional funds for the purpose for which they were budgeted and likewise the funds in other segments of the budget for the purposes for which they were budgeted. This general system of developing the budgets for the University of New Mexico was used for the school years 1967-1968 and 1968-1969. During the school years 1967-1968 and 1968-1969, the academic vice president of the University of New *153 Mexico allocated the available teaching assistantships provided by the budget for the university among the university's various colleges. The dean of each college then apportioned the teaching assistantships awarded to his college among the several departments. During the 1967-1968 and 1968-1969 school years the primary criterion in making the allocation of teaching assistantships among the various colleges and departments within each college at the university was the anticipated enrollment at the freshman and sophomore levels. During the school years 1967-1968 and 1968-1969, there were approximately 100 sections of Freshman English in the first semester of each year and approximately 80 sections in the second semester. During each of these four semesters all but one section of Freshman English was taught by teaching assistants. The section each term not taught by a teaching assistant was taught in some of the terms by an instructor and in other of the terms by a professor who was on the faculty of the University of New Mexico. The University of New Mexico employed some instructors or lecturers on a parttime basis who were not graduate students. A full-time instructor would teach *154 six 3-hour courses during a school year which would mean that he would be in the classroom 9 hours a week. During the school years 1967-1968 and 1968-1969 a full-time instructor would be paid approximately $8,000 a year. A professor or assistant professor would receive more than $8,000 a year. Had teaching assistants not been used to teach Freshman English at the University of New Mexico it would have been necessary for the University to hire additional instructors to teach these classes or to add to the professors on the university's staff. With the few exceptions of the students who were excused on the basis of a placement examination from taking the course in Freshman English, all first-year students at the University of New Mexico were required to take Freshman English. There were very few students excused from taking the course in Freshman English. 450 A grant to a graduate student who is not required to render any services for the grant is referred to at the University of New Mexico as a fellowship. Funds for such fellowshipa are a part of the student aid segment of the budget and not the instruction portion of the budget. During the years 1967-1968 and 1968-1969, there *155 were a number of fellowships in the English Department at the University of New Mexico sponsored by the Federal Government, and known as NDEA fellowships. These NDEA fellowships were outright grants and did not require the student to render any services. When NDEA fellowships were first granted at the University of New Mexico, a student receiving such a fellowship was not permitted to receive pay for any services rendered. However, later the rule with respect to these fellowships was changed and such students were permitted to receive up to $1,000 a year for teaching even though they held a fellowship which did not require any work. Later, the limit of $1,000 was lifted. The Graduate School Bulletin of the University of New Mexico applicable to the school years 1967-1968 and 1968-1969 provided that all Ph.D. candidates in English are required to "gain some teaching experience en route to attaining the doctorate." There were occasional exceptions to this rule where an individual had extensive experience teaching at a secondary school level. However, in most instances some teaching at the college level was required of a candidate for the Ph.D. degree before the degree would be awarded. *156 At times the candidate for the Ph.D degree would have had some experience teaching at the college level as an instructor after receiving a Master's degree and before enrolling for work toward the Ph.D. degree. According to the procedure at the University of New Mexico, the teaching requirement to obtain a Ph.D. degree in English, if the candidate had had no teaching experience at the college level, could be satisfied by the teaching of two classes of Freshman English for one semester or by teaching one class of Freshman English for each of two semesters. There were very few candidates for Ph.D. degrees in English who had neither a fellowship, scholarship, or some form of assistantship. In the few cases of individuals who were not participating in any of these programs or individuals who had scholarships or fellowships which required the rendering of no services, some arrangement would be made for the student to acquire the necessary teaching experience by teaching two courses for one semester or one course a semester for two semesters. These individuals were compensated for their teaching at the same rate as an individual holding a regular teaching assistantship. During the years *157 here in issue individuals holding a fellowship grant would be compensated for teaching the one or two English courses which they would teach to meet the requirement for a Ph.D. degree from the funds available in the instructional segment of the university's budget for teaching assistants and the payments charged to a separate account on the university's records from the fellowship account. An individual seeking a teaching assistantship at the University of New Mexico must apply for admission to the university's graduate school and submit his academic record and other pertinent information. Then in a second application, he applies for financial aid, whether the financial aid involves an assistantship, teaching assistantship, research assistantship, feelowship which requires no services or other form of available financial aid. A person who receives a teaching assistantship, when being considered to continue the assistantship for another year, is judged on the criteria of whether the services he has rendered in teaching are satisfactory and whether he is making satisfactory progress in his study toward the advanced degree. Although a part-time instructor or lecturer might have no greater *158 degree of education than some of the individuals holding a teaching assistantship, to hold the teaching assistantship as such the individual must continue to be enrolled in graduate studies and be making satisfactory progress in his studies. A teaching assistant is required to carry student health insurance rather than being allowed to participate in the faculty health insurance program. He does not participate in faculty retirement benefits, and the time that he teaches does not count toward tenure. He is also provided with graduate student rather than faculty parking. Petitioners on their joint Federal income tax return for the calendar year 1968 excluded from their gross income the $2,700 that petitioner was paid as a teaching assistant during the year 1968. 451 Respondent in his notice of deficiency increased the income as reported by petitioners by this $2,700 with the explanation that the $2,700 petitioner received from the University of New Mexico was paid for services rendered and therefore was not excludable from income as a scholarship or fellowship grant. Opinion Section 117(a)[2] provides for the exclusion from gross income of an amount received by an individual *159 as a scholarship at an educational institution or as a fellowship grant. Section 117(b)(1) provides that in the case of an individual who is a candidate for a degree at an educational institution, subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. However, if the teaching, research, or other services are required of all candidates for a particular degree whether or not the candidate is a recipient of a scholarship or fellowship grant as a condition to receiving such degree, then the teaching, research, or other services shall not be regarded as part-time employment within the meaning of section 117(b)(1). *160 Respondent's primary position in this case is that the amount received by petitioner was not a scholarship or a fellowship grant but rather was payment for part-time employment. In the alternative respondent contends that even if the amount received by petitioner were considered as a scholarship or a fellowship grant, it would not be excludable from petitioner's income because of the provisions of section 117(b)(1). Respondent states that the last sentence of section 117(b)(1) would not operate to cause prior provision of the section to be inapplicable since by the beginning of the year 1968 petitioner had fulfilled the amount of teaching required of all candidates for the Ph.D. in English at the University of New Mexico and therefore her teaching during the calendar year 1968, the year here involved was not "such teaching" as was required of all candidates for the Ph.D. degree in English at the University of New Mexico. In Elmer L. Reese, Jr., 45 T.C. 407 (1966), affirmed per curiam 373 F. 2d 742 (C.A. 4, 1967), we traced in some detail the legislative history of section 117. On the basis of that analysis we concluded that the legislative history of the *161 section showed its intent to be that in order to come within the provisions of section 117, a taxpayer must first show that the payment he received was in fact a "scholarship or fellowship grant" within the meaning of section 117(a) as distinguished from a payment for services performed. In Edward A. Jamieson, 51 T.C. 635 (1969), we concluded under facts quite similar to those present in the instant case that payment to a teaching assistant in French by the University of Texas was not a scholarship or fellowship grant within the meaning of section 117(a). There are, of course, some factual differences in the instant case and the case of Edward A. Jamieson, supra.However, in this case, as in the Jamieson case, the employment of teaching assistants was based not on the number of qualified graduate students who needed financial assistance but upon the need for teachers of Freshman courses at the university. Here, as in the Jamieson case, payment of the teaching assistant was made from the funds in the instructional segment of the university's budget and fellowship grants to graduate students were made from an entirely different segment of the appropriated funds. *162 452 Petitioners argue that the case of Elmer L. Reese, Jr., supra, is distinguishable from the instant case in that in the Reese case the taxpayer received payment for teaching services from the Baltimore County Board of Education and a scholarship of waived tuition from Johns Hopkins University in a program subsidized by the Ford Foundation, whereas petitioner in the instant case received a scholarship of "waived tuition" from the University of New Mexico, which was the same source from which she received the payments as a teaching assistant. First, we must point out that we find nothing in this record to show that petitioner did have "waived tuition". However, even if petitioner had established this fact, we woud not agree that the difference in the source of the payment for services in this case and the Reese case would require us to reach the opposite result in this case from that reached in the Reese case. Petitioner quotes the statement in the Reese case (45 T.C. at 415), that "The fallacy of that argument lies in her apparent assumption that the amount she received from the Baltimore County Board of Education was so closely related to the scholarship *163 as to bring section 117(a) into play." We do not agree with petitioner that it was the fact that the waived tuition and the payment for services were from different sources that was the "fallacy" referred to in the quoted sentence in the Reese case. The sentence following the sentence quoted by petitioner states: "In making this assumption, she equates a situation where all degree candidates are fully compensated for their services with a situation where some candidates are either uncompensated or only partially compensated for such services. The facts in the instant case show that all candidates for the Ph.D. degree in English who taught English courses at the University of New Mexico were compensated for their services at the same rate during the years when petitioner was a teaching assistant. Even though there was some discussion about a limitation on compensation for NDEA fellowship students in certain years, the clear import of the testimony in this case is that during the school years here in issue all individuals working toward a Ph.D. degree in English and teaching English courses were compensated at the same rate. In this respect the facts here are similar to those in the *164 Reese case. The situation here is vastly different from that involved in Robert Henry Steiman, 56 T.C. 1350 (1971), on which petitioner relies. Here there was no supervision of petitioner's teaching of Freshman English, whereas the work done by the taxpayer involved in the Steiman case was supervised by the faculty members who taught the particular course to which the student was assigned. In that case we concluded that the taxpayer had shown that "during the years in issue they were 'paid to study' rather than 'paid to work'." In the instant case the record amply shows that petitioner was paid to work rather than paid to study. In reaching our conclusion we have given full consideration to the testimony of petitioner's witness who was during the year 1968 Dean of the College of Arts and Sciences at the University of New Mexico. In our view his testimony would support a conclusion that historically the system of having Freshman English courses taught by teaching assistants who held Master's degrees and were candidates for the Ph.D. degree was to devise a method of giving financial assistance to the graduate students at little or no cost to the university. By having *165 these students perform a teaching service which otherwise would require the employment of an instructor, the student could finance his education and the university receive teaching services at a lesser cost than would be required to employ instructors to teach the courses. We likewise have given consideration to the statement of this witness that his personal conviction is that teaching at the college level is a very valuable part of the training program for the candidate for the Ph.D. degree in English. However, in our view the historic reason for using candidates for Ph.D. degrees to teach Freshman courses does not turn salary payments made to those students for their teaching services into the equivalent of a scholarship or fellowship grant. See Stephen L. Zolnay, 49 T.C. 389 (1968). In view of our conclusion that petitioner received payment for services rendered in the calendar year 1968 and that this payment did not constitute a scholarship or fellowship grant within the meaning of section 117(a), we need not determine whether respondent's construction of the provisions of section 117(b)(1) is correct. Decision will be entered for respondent. 453 Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule. - In the case of an individual, gross income does not include - (1) any amount received - (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or (B) as a fellowship grant, including the value of contributed services and accommodations; (2) any amount received to cover expenses for - (A) travel, (B) research, (C) clerical help, or (D) equipment. which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient. (b) Limitations. - (1) Individuals who are candidates for degrees. - In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.↩