JOHN B. KARRH and MARY H. KARRH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Karrh v. Commissioner
Docket No. 6104-70.
United States Tax Court
T.C. Memo 1973-24; 1973 Tax Ct. Memo LEXIS 260; 32 T.C.M. (CCH) 88; T.C.M. (RIA) 73024; February 5, 1973, Filed Henry B. Hardegree, for the petitioners. J. Leon Fetzer, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the taxable years 1966 and 1967 in the respective amounts of $1,144.45 and $656.15. Petitioners did not assign as error the Commissioner's disallowance of a portion of their deduction for interest expense for the taxable year 1966. The sole issue remaining for decision is whether payments received by petitioner John B. Karrh from the University of Alabama (university) for participation in a research project in 1966 and 1967 are excludable from the petitioners' gross income 2 for those years under *261 the provisions of section 117 of the Internal Revenue Code of 1954. [1] Petitioners excluded on their returns these payments in the amounts of $6,266.52 and $3,924.74 for the taxable years 1966 and 1967, respectively, but have conceded $720 of the payment received in 1966 represented taxable income for teaching services at the university. In addition, petitioners reported income from the university for teaching services of John B. Karrh in the amounts of $660 in 1966 and $2,995 in 1967.
Some facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein. The petitioners, husband and wife, resided in Northport, Alabama, at the time the petition in this case was filed. For the taxable years 1966 and 1967, they filed their joint Federal income tax returns with the director, Internal Revenue Service Center, Chamblee, Georgia. Petitioner Mary H. Karrh is a party to this case by virtue of having filed joint returns with her husband for the years in issue, and the term "petitioner" will hereinafter refer to John *262 B. Karrh alone. 3 Petitioner enrolled in the university in 1964 as a candidate for a Ph.D. degree in civil engineering. He held a master's degree in civil engineering from Stanford University and for the five years prior to his enrollment he was a resident engineer for the Alabama Highway Department (highway department). He had an interest in a project known as the AASHO Road Test and how the results of that project would relate to Alabama highways. The AASHO Road Test results constitute the product of a research project carried on under the auspices of the American Association of State Highway Officials under the sponsorship of the United States Bureau of Public Roads and the National Academy of Sciences over a three year period at an approximate cost of $27,000,000. The research attempted to explain the design of highway pavements and resulted in the development of several linear equations for this purpose. When petitioner decided to seek a doctor's degree at the university, he contacted Professor Henson K. Stephenson who was at that time a professor in civil engineering at the university. Professor Stephenson advised petitioner that it would be possible for petitioner *263 to be employed as a research associate while pursuing his studies for his doctor's degree and at the same 4 time work on a research project entitled, "Application of the AASHO Road Test Results to Alabama Conditions." The project was designed to interpret the results of the AASHO Road Test and to ascertain to what extent the results would apply to conditions in the State of Alabama and to determine what, if anything, in the AASHO Road Test results would be of value in building highways in Alabama. The Alabama project involved sophisticated research techniques, various types of data gathering and empirical research. The project was originated by Professor Stephenson who submitted it for approval to the civil engineering department of the university, the office of engineering research, and the office of contracts and grants of the university. Upon approval it was submitted to the highway department, which financed the project through the cooperation of the Bureau of Public Roads of the U.S. Department of Transportation. The highway department provided the total sum of $27,093 to the university for the project and in return received from the university monthly and quarterly *264 progress reports and a comprehensive report of the findings of the project suitable for publication. The contract between the highway department and the university also provided for quarterly inspections by the highway department. 5 The contract made no mention of scholarships or fellowships but provided for salaries and wages of those employed to work on the project. Professor Stephenson was in charge of the project and petitioner was one of the two or three graduate students who participated. There were a total of 15 students who participated for varying lengths of time during the period the project was being conducted. The work schedules were prescribed by Professor Stephenson and, in accordance with university policy, the graduate students were required to work half time or at least 20 hours per week on a regular basis. Petitioner's schedule generally began at 1:00 p.m. and he worked until 5:00 p.m. five days per week; however, this schedule was adjusted to accommodate classes petitioner might be required to attend. At times petitioner worked on the project in the mornings, evenings and on weekends. He averaged 20 hours per week and the university paid him at the rate *265 of $4.26 per hour for the hours he worked from funds it received from the highway department under the contract. Petitioner received no fringe benefits by reason of his participation in the project. FICA taxes were not withheld from the payments made to him but Federal income taxes were withheld. During the entire time of his participation on the project the hourly rate remained the same. All of 6 petitioner's research was conducted under the supervision of Professor Stephenson who instructed petitioner on specific work to be performed on a day-to-day or week-to-week basis. The project employed various research techniques of a highly sophisticated nature to gather data from sections of highway constructed in northern and central Alabama. Petitioner's participation in the project was so significant that he was recognized as co-author with Professor Stephenson in the report of the project published in August 1967, known as report No. 22 of the Alabama Highway Research series, "Application of AASHO Road Test Results to Alabama Conditions." Petitioner received no academic credit for his work on the project and the research he conducted was not a condition to receiving his *266 doctor's degree. Research of the nature conducted by the project or research of any nature was not required of candidates for doctoral degrees in civil engineering at the university; it was only necessary to write an acceptable dissertation required for the degree, which might involve research. Petitioner's dissertation was entitled "The Stress Distribution Within Embankment Foundation Systems." The dissertation involved a theoretical approach toward the stress analysis of embankment-foundation systems rather than an 7 empirical study of highway easements. It did not utilize any data developed by the AASHO project; however, the research conducted on the project in general benefited petitioner's skills as a civil engineer. Petitioner completed the academic requirements for his doctor's degree in July 1968, and completed his dissertation in January 1969. He was awarded a Ph.D. in civil engineering in 1970. Petitioners, on their returns for the taxable years 1966 and 1967 excluded from gross income the respective sums of $6,266.52 and $3,924.74 received by petitioner from the university for his participation in the AASHO project, identifying the sums as being excludable *267 as a fellowship grant. Respondent, in his notice of deficiency, determined that of the sums excluded by petitioners $720 received in 1966 represented payment for teaching services and the remainder excluded in 1966 and all of that excluded in 1967 did not represent funds from an excludable fellowship grant but instead represented compensation for services rendered and increased petitioners' taxable income accordingly. The respondent contends that petitioner's participation in the research project constituted employment for 8 which he was compensated because his services primarily inured to the benefit of the university and the highway department. Section 117 of the Code permits a taxpayer to exclude from gross income amounts received as a scholarship at an educational institution or received as a fellowship. Section 1.117-4(c), Income Tax Regs., provides that the exclusion shall not apply to amounts received in order to permit the recipient to pursue studies or research if they constitute compensation for past present or future employment services or compensation for services subject to the direction or supervision of the grantor. It is further provided that if the amounts *268 received are for the primary purpose of furthering the education and training of the recipient in his individual capacity, they are excludable even though there may be an incidental benefit to the grantor. The test prescribed by the regulations has been applied by the courts and is designed to examine the primary purpose of the grant. Robert Henry Steiman, 56 T.C. 1350 (1971); Stephen L. Zolnay, 49 T.C. 389 (1968). The primary purpose referred to is the purpose for which the payments are made. Hembree v. United States, 464 F. 2d 1262 (C.A. 4, 1972); Parr v. United States, F. 2d (C.A. 5, Nov. 30, 1972). The decision in each case turns upon the particular 9 facts and circumstances of that case. Stephen L. Zolnay, supra; Chander P. Bhalla, 35 T.C. 13 (1960). We conclude that, considering all the facts and circumstances, petitioner was being compensated for the services he rendered. It appears to us that the primary purpose of the grant was to compensate petitioner rather than to aid him in his education. The more important facts which lead us to this conclusion follow. Petitioner was paid on an hourly basis *269 for the hours he worked and was required to work an average of 20 hours per week. He was not free to engage in any research he wished but was instead under the direct supervision of Professor Stephenson.The contract with the highway department required regular reports and provided for inspection by the highway department. Petitioner received no credit toward his academic degree for the work he performed nor any academic grade. The benefit derived to the grantor was more than incidental. Petitioner's efforts on the project were so substantial that he was listed as a co-author of the report. Petitioner raises a question as to the identity of the "grantor" and whether such "grantor" received a benefit from petitioner's activities.We feel that the benefits derived from petitioner's participation 10 inured to the benefit of both the university and the highway department in a greater degree than they inured to his own benefit. His efforts permitted the university to fulfill its contractual obligation with the highway department and to receive the funds provided by the contract.The magnitude of research funds passing through institutions of higher learning reflects on the relative *270 academic standing and stature of such institutions in the research fields. There is an active competition among such institutions to obtain funds for research. The benefit conferred upon the highway department cannot be questioned. It received a published report prescribing how the AASHO Road Tests were applicable to building highways in Alabama. The highway department did not identify the funds as a scholarship or fellowship and we hold that the definition of a scholarship or fellowship as a "relatively disinterested, "no-strings' educational grant" is not satisfied here. Bingler v. Johnson, 394 U.S. 741 (1969); Parr v. United States, supra.
We recognize that petitioner derived a benefit from his participation in the project. No doubt he improved his skills as a civil engineer and learned valuable research techniques, but we conclude that these were incidental and not the primary purpose of the grant. It is not particularly 11 significant that the taxpayer derive substantial educational benefits. Frederick Fisher, 56 T.C. 1201 (1971). Petitioners rely on section 117(b) (1) of the Code which provides that if the research involved is required *271 of all candidates for a particular academic degree and the taxpayer is seeking such a degree his research activities will not be considered as part-time employment. In our view petitioner cannot possibly come within the scope of this provision. Professor Stephenson testified that a candidate for a Ph.D. in civil engineering was not required as a prerequisite for that degree to do any research other than might be involved to aid him in submitting an acceptable dissertation. See Edward A. Jamieson, 51 T.C. 635 (1969). In Chander P. Bhalla, supra, upon which petitioners rely, all candidates for the academic degree sought by taxpayer were required to perform the research assignment as a condition to receiving the degree. We held there that the activities of the taxpayer fell squarely within the provision of section 117(b) (1) as to the requirement for an academic degree. Here, they do not. Petitioners rely on Steiman, supra, but that case is distinguishable because the taxpayers were required to perform services as graduate assistants in order to receive 12 the academic degrees they were seeking. That was the primary factor that led us *272 to hold the stipends received to be nontaxable. As explained above that element is missing here. We conclude that no single factor which appears to have been of such significance so as to have been in itself determinative in a reported decision involving section 117 would cause us to hold one way or the other in this case, but instead our holding is based upon all the facts and circumstances involved and we conclude that they weigh heavily in favor of the amounts received being treated as compensation. Decision will be entered for the respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩