ALLEN J. and DENISE S. WORKMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Workman v. Commissioner
Docket No. 4245-71.
United States Tax Court
T.C. Memo 1974-5; 1974 Tax Ct. Memo LEXIS 314; 33 T.C.M. (CCH) 16; T.C.M. (RIA) 74005; January 14, 1974, Filed. Allen J. Workman and Denise S. Workman, pro se.
Richard R. Harrington, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION
GOFFE, Judge: Respondent determined a deficiency of $1,018.00 in petitioners' Federal income tax for the year 1969. The only issue for decision is whether payments received by Denise S. Workman for services as a teaching assistant in the French Department at the University of California at Los Angeles are excludable as a 2 fellowship or scholarship grant under the provisions of section 117, Internal Revenue Code of 1954. [1]
FINDINGS OF FACT
Some facts have been stipulated *315 by the parties and are so found.
Allen J. and Denise S. Workman are husband and wife whose legal residence was Los Angeles, California, when they filed their petition in this proceeding. Their joint Federal income tax return for the year 1969 was filed by them with the Ogden Service Center of the Internal Revenue Service at Ogden, Utah.
In 1965 Denise S. Workman (herein called petitioner) enrolled at the University of California at Los Angeles (U.C.L.A.) to pursue a masters degree in French. She was a teaching assistant for each of the years 1965 through 1969 in the U.C.L.A. French Department. During 1969 petitioner was a teaching assistant supervisor as well as a Ph. D. candidate in French. Her responsibilities as a teaching assistant included teaching undergraduate French courses; keeping office hours; preparing, administering and correcting examinations; and attending classes of other newer assistants and commenting on their teaching skills. She worked 20 hours per week. She was not covered by the university retirement or health plan, and no deductions for these purposes were made from the amounts she received from U.C.L.A. As a matriculated student, however, she was entitled *316 to free medical and hospitalization services through 3 the university student health service. No social security taxes were withheld from her salary because part-time students working for a university are not covered by social security if they are attending classes.
Teaching assistants at U.C.L.A. act as assistants to full-time faculty members. They are selected on their academic performance and prior teaching experience, but financial need is not considered in their selection. As their teaching assistant experience at U.C.L.A. advances, their salary is increased. They are paid out of a university fund from which all faculty salaries are drawn. They are regarded by the university as part-time employees who free the time of its regular faculty to perform research.
U.C.L.A. teaching assistants are responsible for elementary instruction in their respective departments and they individually control the progress of the classes they instruct. If there were no such assistants, the university would have to increase the number of its full-time faculty members to instruct the student body.
In addition to teaching assistantships, U.C.L.A. also provides awards and grants to students *317 based solely on their scholastic excellence. An outright grant for academic merit to an undergraduate is termed a scholarship, whereas the same outright grant to a graduate student is considered a fellowship. The assistantship is 4 unlike either a scholarship or a fellowship in that some sort of activity, contribution or service is expected in return. If a teaching assistant fails to carry out enumerated responsibilities, then his or her salary would be terminated by the university.
In the U.C.L.A. French Department not all candidates for a Ph. D. degree are required to become teaching assistants or to have reasonably equivalent teaching experience to obtain their degree.
Petitioner received $4,004.72 from U.C.L.A. in 1969 while serving as a teaching assistant. She excluded this amount from the gross income reported on her Federal income tax return for 1969.
Respondent determined that no portion of the $4,004.72 received by petitioner from U.C.L.A. in 1969 is excludable from her gross income under section 117.
OPINION
Section 117(a) excludes from gross income any amount received by an individual as a scholarship or fellowship grant. Section 1.117-4(c), Income Tax Regs. *318 , provides that payments made as "compensation for past, present, or future employment services" and payments made to "an individual to enable him to pursue studies or research primarily for the benefit of the grantor" are not excludable as scholarship or fellowship grants. In Bingler v. 5 Johnson, 394 U.S. 741 (1969), the Supreme Court upheld the validity of these regulations. The Supreme Court also noted in Bingler that the regulations under section 117 comported with the ordinary understanding of the terms scholarship and fellowship as meaning "relatively disinterested "no-strings' educational grants, with no requirement of any substantial quid pro quo from the recipients." Bingler v. Johnson, supra at 751.
Respondent contends that all the payments received by petitioner in 1969 as a teaching assistant were compensation for services and that the amounts were paid primarily as compensation. Hence he argues that the amounts paid for her services as a teaching assistant do not qualify as either a scholarship or a fellowship grant within the ambit of section 117(a) and must be included in her gross income.
The essence of petitioner's argument is that the function *319 of teaching assistants is scholarly and, by its very nature, a grant, which should be excludable. She contends that the menial condition of teaching assistants should be changed and improved to create an aesthetic ideal in both the university and the state. Petitioner points out that prior to 1969 a teaching assistant's stipend at U.C.L.A. had always been considered excludable, and that she received a tax certificate from the French Department indicating her stipend for 1969 was excludable from her income for that year. She states that many other teaching assistants filed such certificates 6 with their 1969 returns and have never been audited by the Internal Revenue Service. Thus, if the stipend is excludable for some, then it should be excludable for all recipients. She also points out that she never received social security, health, unemployment or tenure benefits from the university such as the regular full-time faculty received. She argues that if she must pay taxes for such social benefits, then she should also receive them. And, finally, she stresses that she was closely supervised and that her teaching was necessary to her own education.
In Elmer L. Reese, Jr., 45 T.C. 407 (1966), *320 affirmed per curiam 373 F.2d 742 (C.A. 4, 1967), we held that an exclusion based on section 117 must be tested by whether or not payments were made primarily for the purpose of furthering the education and training of an individual or to compensate a person for services which benefited the grantor. Such determination of primary purpose of such payments in each case must necessarily turn upon its own particular facts and circumstances. Stephen L. Zolnay, 49 T.C. 389, 395 (1968).
In Edward A. Jamieson, 51 T.C. 635 (1969), under facts quite similar to those of the instant case, we concluded that payments to a teaching assistant in French at the University of Texas did not constitute a scholarship or fellowship grant within the meaning of section 117(a). Instead, we held that they were taxable as 7 compensation for services rendered. We reach the same conclusion on the facts of this case.
As in Jamieson, the payments to petitioner as a teaching assistant were not based upon her financial need, but were made only for services actually rendered and were paid to her in her capacity as a part-time employee of U.C.L.A. Teaching assistantships *321 at U.C.L.A. were not awarded upon the basis of the number of qualified graduate students in need of financial assistance. Petitioner's salary was drawn from university funds earmarked and used to pay the salaries of its regular full-time faculty.
While payments for teaching and close supervision might enable petitioner to further her own education and training, it is equally clear that the primary purpose of any payments to her by the university was to compensate for her teaching services rendered. Petitioner fully understood that she was being paid for teaching, and she was certainly aware that the predominant relationship she had with the university while teaching undergraduate French courses was that of an employee. If she ceased carrying out her teaching responsibilities, her salary from the university would have been terminated. On the other hand, no such services were expected from recipients at U.C.L.A. of either a scholarship or a fellowship grant, which were outright and with "no strings" attached. As in Jamieson, this difference in treatment accorded 8 by the university to teaching assistants and the holder of scholarships and fellowships in its administration carries *322 some weight in our determination here. Similarly, differences in the privileges accorded regular staff faculty and not generally accorded teaching assistants - including unemployment insurance, social security and tenure benefits - in no way preclude our finding of an employer-employee relationship. U.C.L.A. was and is free to categorize its various employees and give each classification different privileges. We have found that under pertinent regulations the petitioner was precluded from receiving social security benefits so long as she was attending classes. Furthermore, as a student she was entitled to complete medical care as needed through the existing student health service. Tenure and unemployment compensation could not be granted to a student working only part-time who was not expected to remain beyond her study for a doctorate degree.
While we recognize petitioner's sincere desire to create an "aesthetic ideal" within both the university and the State beginning with the improved treatment of its teaching assistants, she has not shown that the payments she received in 1969 for teaching services were anything other than compensation for work performed and thus includable *323 in her gross income. The certificate she received from the French Department for 1969 indicating that her payments for 9 teaching were nontaxable does not control the taxable character of such payments, which must be tested according to the intent and scope of section 117(a).
Accordingly, we hold that the amounts received by petitioner from U.C.L.A. do not qualify as excludable scholarship or fellowship grants under section 117, but are taxable as compensation for services rendered as a teaching assistant.
Decision will be entered
for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as amended, unless otherwise indicated.↩