DAVID R. ECKES and BARBARA K. ECKES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT. RALPH E. STERN and CHERYLE E. STERN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.
Eckes v. Commissioner
Docket Nos. 2113-76, 2442-76.
United States Tax Court
T.C. Memo 1978-192; 1978 Tax Ct. Memo LEXIS 324; 37 T.C.M. (CCH) 834; T.C.M. (RIA) 780192; May 25, 1978, Filed *324 During the last six months of 1972, petitioners worked 70 to 75 hours per week at Bethesda Lutheran Hospital where they were engaged in a post-medical school residency program.Petitioners were paid $4,984.92 by the hospital, $1,107.48 of which was attributable to housing provided by the hospital. Held, on the facts, no portion of the amount received by petitioners from Bethesda Lutheran Hospital constituted a scholarship or fellowship grant which is not includable in gross income pursuant to section 117, I.R.C. 1954. Heldfurther, the value of the housing provided petitioners by the hospital is not excludable from gross income pursuant to section 119, I.R.C. 1954, because petitioners were not required to accept the lodging as a condition of their employment. Harry N. Ray, for the petitioners. Dale L. Newland, for the respondent. BRUCE MEMORANDUM OPINION BRUCE, Judge: Respondent determined deficiencies in Federal income taxes for 1972 in these consolidated cases as follows: Docket No.
Petitioners
Deficiency
2113-76
David R. Eckes, et ux
$ 227.50
2442-76
Ralph E. Stern, et ux
243.64
By an amended answer in docket number 2113-76, respondent alleged that the deficiency was actually $623.50. *325 By a second amended answer in docket number 2442-76, respondent alleged that the deficiency was actually $674.50. The issues for decision are (1) whether $1,800 of the amounts paid to David R. Eckes and Ralph E. Stern (hereinafter referred to as the petitioners) by Bethesda Lutheran Hospital was a scholarship or fellowship grant within the meaning of section 117[1] such that that amount is not includable in their gross incomes, and (2) whether $1,107.48 pertaining to housing provided to petitioners by Bethesda Lutheran Hospital did not constitute income to them pursuant to section 117 or is excludable from their gross incomes pursuant to section 119. [2] *326 *327 The only evidence before us is a stipulation of facts with attached exhibits which we incorporate *328 herein by this reference. The pertinent facts will be summarized below. David R. Eckes and Barbara K. Eckes are husband and wife with a legal residence in Hastings, Minnesota. They timely filed a joint Federal income tax return for the calendar year 1972. Ralph E. Stern and Cheryle E. Stern are husband and wife with a legal residence in Santa Rosa, California. They timely filed a joint Federal income tax return for the calendar year 1972. In 1972 Bethesda Lutheran Hospital offered a family practice program which was affiliated with the University of Minnesota Department of Family Practice and Community Health (hereinafter Department) for the clinical training of residents. Petitioners Eckes and Stern, while medical students at the University of Minnesota and the University of Illinois, respectively, submitted applications to the University of Minnesota Graduate School for what was called a "Graduate Fellowship in the Clinical Medical Field and Pathology." The Department and the administrator of Bethesda Lutheran Hospital accepted each petitioner's application, and on May 22, 1972, a residency agreement was reached between each petitioner and the University of Minnesota and Bethesda *329 Lutheran Hospital. [3]
Each petitioner's first year residency agreement provided as follows, with each name and date space appropriately filled in: AFFILIATED PROGRAM IN FAMILY PRACTICE AND COMMUNITY HEALTH UNIVERSITY OF MINNESOTA
RESIDENCY AGREEMENT / First Year AGREEMENT BETWEEN BETHESDA HOSPITAL, ST. PAUL, MINNESOTA, AND FOR THE PERIOD JULY 1, 1972 to JUNE 30, 1973. BETHESDA hospital agrees: 1. To provide a monthly stipend of $700 and to provide housing, furnished including utilities (gas and electricity); also, to provide on-duty meals at no cast [sic] to the resident. A housing allowance not to exceed $175 may be provided in lieu of hospital-provided quarters at the discretion of the hospital. *330 2. To furnish uniforms and the laundry of the uniforms. 3. To furnish an insurance contract for hospitalization coverage during the period of the residency for both the resident and members of his immediate family, only including wife and children. 4. To allow a two weeks' vacation to be arranged at the convenience of the hospital. 5. To provide parking space at the hospital. 6. Malpractice and liability insurance will be provided. 7. To present a certificate upon completion of a satisfactory period of residency. The Resident agrees: 1. To observe the regulations and schedules outlined by the Residency Committee for members of the House Staff. 2. To conduct himself in a professional manner in carrying out his duties. 3. To serve faithfully during the entiry [sic] residency period, not accept fees from patients or to engage in any employment outside of the hospital. THE ABOVE PROVISIONS ARE SATISFACTORY. I AGREE TO SERVE AS A FIRST-YEAR RESIDENT IN THE FAMILY PRACTICE RESIDENCY PROGRAM. Date: /s/ (Resident) Date: /s/ (Administrator) Date: /s/ (Program Director) Each petitioner's average work week during the pertinent time period consisted of between 70 and 75 hours. *331 His duties while at Bethesda Lutheran Hospital included the following: a. Performing physicals on newly admitted patients and recording these findings in a medical chart. b. Writing daily progress notes. c. Writing transfer notes on patients. d. Writing discharge orders. e. Dictating case summaries. f. Performing or assisting in emergency treatment. g. Preparing patients for surgery. h. Commencing in administration of intravenous fluids. i. Inserting nasal gastric tubes. j. Changing dressings and removing sutures. For all of the duties described above, each petitioner was subject to the supervision and direction of the Bethesda Lutheran Hospital and Clinic medical staff. He had no primary or direct responsibility for the care or treatment of patients. Nor was it the responsibility of either petitioner to schedule or post operative room assignments, obtain written consent for surgery, complete death notices, sign death certificates, or perform or assist in autopsies - though attending autopsies was encouraged for educational purposes. The "Residency Training Program," of which petitioners work at Bethesda Lutheran Hospital was a part, was of a three-year course *332 in Family Practice as a specialty. Each petitioner's successful completion of the first year of the program qualified him for a license to practice medicine in Minnesota. Completion of the full three-year course entitled petitioners to receipt of a document from the University of Minnesota Medical School certifying their satisfactory completion of the training experience and qualifying them to take their National Board Examinations in Family Practice. Successful completion of the National Board Examinations would entitle petitioners to be certified as diplomats in the new specialty of Family Practice. Neither petitioner received, however, any degree from the University of Minnesota at the completion of his residency program. Under the affiliation agreement between the University of Minnesota and Bethesda Lutheran Hospital, the remuneration of first year residents (interns) and maintenance of the first year program was the responsibility of Bethesda Lutheran Hospital. Each petitioner received a Wage and Tax Statement and a corrected Wage and Tax Statement, Forms W-2, showing total F.I.C.A. wages from Bethesda Lutheran Hospital in 1972 of $4,984.92, $3,877.44 of which was shown *333 as subject to withholding and $1,107.48 of which was shown simply as "Wages, Tips, and other Compensation." In 1972 Bethesda Lutheran Hospital had hospital-owned housing available for seven residents. Bethesda Lutheran Hospital's explanation for its offering hospital-owned housing to residents is reflected in a "To Whom It May Concern" letter, issued over the signature of the hospital administrator, and is as follows: The residency agreement for the academic year beginning July 1, 1971 provides that the hospital agrees: "To provide a monthly stipend of $700 and to provide housing, furnished, including utilities (gas and electricity); also to provide on-duty meals at no cost to the resident. A housing allowance not to exceed $175 may be provided in lieu of hospital provided quarters at the discretion of the hospital." This provision of the Residency Agreement applied to all of the hospitals in the twin city area affiliated with the University of Minnesota Department of Family Practice and Community Health. Bethesda Hospital elected to require that the residents live in hospital owned houses on hospital property. The hospital board felt that the availability of qualified physician *334 services during emergencies or disasters would permit the hospital to better serve the patients. The resident, therefore, was required by the hospital, as the employer, to live in one of its houses for its own convenience. In fact, however, use of the hospital-owned housing was simply encouraged, but not required. First-year residents were given first choice to utilize the limited hospital-owned housing available on a first-come, first-serve basis. In 1972 there were five first-year residents, five second-year residents, and five third-year residents who had to seek housing outside of the hospital. Petitioners' reliance upon section 119 as an alternative ground for excluding the value of their housing from their gross incomes may be disposed of summarily. As a condition for such exclusion, section 119(b) requires that "in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment." The parties' stipulation that residence in the hospital-owned housing was notrequired disposes of any meritorious reliance upon section 119. We turn now to the question of the applicability of section 117 to the facts *335 herein. Section 117(a) as arguably pertinent provides that any amount received as a scholarship at an educational institution or as a fellowship grant, including the value of contributed services and accommodations, is not to be included in gross income. The favorable tax treatment granted under subsection (a) is limited under subsection (b), however, and a distinction is drawn between whether the recipient is or is not a candidate for a degree at an educational institution. Under subsection (b)(1), in the case of an individual who is a qualifying degree candidate, subsection (a) does not apply to the portion of any amount received which represents payment for "services in the nature of part-time employment required as a condition to receiving the scholarship or fellowship grant." However, services required of all candidates for a particular degree are not to be regarded as the prohibited "part-time employment." Under subsection (b)(2), in the case of a non-degree candidate, the application of subsection (a) is limited to scholarships and fellowships proceeding from certain enumerated types of grantors, and further, "to an amount equal to $300 times the number of months for which *336 the recipient received amounts under the scholarship or fellowship grant during such taxable year" for not more than a total of 36 months (an amount which in this case would equal $1,800). Of overriding importance in the current case, however, is section 1.117-4(c), Income Tax Regs., which provides in pertinent part that with the exception noted above for certain degree candidates, "any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor" is not to be considered a scholarship or fellowship grant for purposes of section 117. The validity of this regulation was upheld by the Supreme Court in Bingler v. Johnson,394 U.S. 741 (1969), and we find it dispositive of the issues under discussion. We should point out at this juncture that under the state of the pleadings and Rule 142(a), Tax Court Rules of Practice and Procedure, the burden of proof with respect to whether $1,800 of the amount paid to petitioners by Bethesda Lutheran Hospital constituted *337 compensation versus a scholarship or fellowship grant rests with respondent. With respect to whether the housing was "contributed * * * accommodations" received as part of or as a scholarship or fellowship grant, the burden of proof lies with petitioners. Nevertheless, we conclude on the basis of the evidence in this record that respondent is entitled to prevail on both counts. Under the affiliation agreement between the University of Minnesota and Bethesda Lutheran Hospital, the remuneration of first year residents (as were petitioners in 1972) was the responsibility of the hospital. The residency agreement under which petitioners became entitled to receive money and housing from Bethesda Lutheran Hospital is immediately suggestive of a compensation for services arrangement. The nature and extent of the services performed by petitioners, subject to the supervision and direction of the hospital medical staff, is further indicative of that conclusion. We do not doubt that, in accordance with the stated purpose of the residency program in which they participated, petitioners were taught "the skills necessary for the continuous and comprehensive provision of primary care to both *338 individuals and families." That fact alone does not change, however, the character of the remuneration they received. See Proskey v. Commissioner,51 T.C. 918, 925 (1969); Anderson v. Commissioner,54 T.C. 1547 (1970). We are unable to distinguish petitioners' situations in any material respect from those of numerous other medical resident-taxpayers who have attempted to avoid income taxes by asserting that all or a portion of the compensation they received during residency programs falls within the ambit of section 117(a). See e.g., Weinberg v. Commissioner,64 T.C. 771 (1975), and cases cited therein. It does not matter whether petitioners were registered as students at the University of Minnesota, whether they received all the fringe benefits that other hospital personnel received, or whether the residency program was connected in some manner with the University of Minnesota. There is simply no evidence in this record to support a conclusion that either the money or housing that petitioners received from Bethesda Lutheran Hospital constituted "relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial quidproquo from" them, Bingler v. Johnson,supra at 751, *339 and there is insufficient evidence to persuade us that what they received was for any reason other than compensation for services rendered. To the contrary, we are convinced that compensation is exactly what they received. [4]
Decisions will be entered under Rule 155. Footnotes
1. Unless otherwise noted all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. ↩
2. In his notices of deficiency issued to each petitioner, respondent increased gross income by $1,107.48 and explained that neither section 117 nor section 119 was applicable to prevent the housing allowance from being included in gross income. In his answer in the case of petitioner Eckes and by way of an amended answer in the case of petitioner Stern, respondent asserted an alternative position that if the Court were to find section 119 applicable on the housing issue, then petitioners were not entitled to the $1,800 reduction in gross income per their returns as filed. Subsequent thereto respondent filed an amended answer in the case of petitioner Eckes and a second amended answer in the case of petitioner Stern alleging that each petitioner's gross income should include both the $1,800 and $1,107.48 amounts in question because section 117 was inapplicable to both and section 119 was inapplicable to the $1,107.48. When this case was called for trial on March 23, 1977, petitioners' counsel indicated that petitioners wished to take the position that the entire amounts they received from Bethesda Lutheran Hospital (approximately $2,000 in addition to the amounts already in issue) were not gross income pursuant to section 117, and they wished to maintain an alternative position that should the Court find section 117 inapplicable, the $1,107.48 value of their lodging was excludable from gross income under section 119. Petitioners were given leave to file amended petitions on or before April 4, 1977, in order to get their positions properly before the Court. More than one year later, no such amended petitions have been received by the Court. Consequently the amounts in issue are limited to those set forth above. In addition, at the time this case was called for trial, counsel for petitioners requested leave to have included in the record of this case certain testimony from a Dr. Maynard Jacobson which petitioners' counsel expected to develop in another case to be tried later in the trial session. Upon the Court's suggestion, it was agreed that petitioners and respondent would attempt to stipulate to the portions of Dr. Jacobson's testimony which might be properly made a part of the record in this case. Again, more than one year later, no part of Dr. Jacobson's testimony has been made a part of the record in this case, hence we do not have Dr. Jacobson's testimony before us, and petitioners' argument based upon that testimony will accordingly be ignored. We are aware of no legal theory by which evidence received in one case is incorporated into the record of another case "by general terms" merely because the same evidence might be pertinent in both cases.↩
3. Respondent objects in his reply brief to our finding that the University of Minnesota was a party to the residency agreements. However it is stipulated that the University of Minnesota was a party to the agreements, respondent's requested findings of fact track the stipulation, and the copies of the agreements attached to the stipulations are inconclusive. Because we fail to perceive any significance in whether the University was a party to the agreements, we will adhere to the stipulation.↩
4. As a result of our conclusion above there is no need to reach petitioners' argument concerning their being "degree candidates," but we note that in any event, there is no evidence in this record that the services they performed were required of all candidates for the particular degree for which they were alleged candidates, see Jamieson v. Commissioner,51 T.C. 635↩ (1969).