JAMES E. WHITE and BARBARA J. WHITE, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
White v. Commissioner
Docket No. 3651-76.
United States Tax Court
T.C. Memo 1978-109; 1978 Tax Ct. Memo LEXIS 404; 37 T.C.M. (CCH) 492; T.C.M. (RIA) 780109; March 21, 1978, Filed Arnold Barrish, for the petitioners. Fredrick B. Strothman, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $795 in petitioners' Federal income tax for 1973. The sole issue presented is whether petitioners are entitled to exclude $3,600 from their gross income in 1973 as a scholarship or fellowship grant under section 117. [1]
FINDINGS OF FACT Some facts have been stipulated and are so found. Petitioners, James E. White and Barbara J. White, are husband and wife who resided in Englewood, Colo., at the time the petition herein was filed. James E. White (hereinafter referred to as petitioner) is a physician. *405 In June 1972 petitioner graduated from Loma Linda University School of Medicine (University) in Los Angeles, Calif., and was licensed to practice medicine in California in July 1973. From June 1972 through June 1976 petitioner was a resident specializing in obstetrics and gynecology at Loma Linda University Medical Center, a 510-bed hospital affiliated with the University's school of medicine. In 1973 the obstetrics and gynecology department at the hospital was staffed by 11 attending physicians in addition to resident physicians who were supervised by the former. Physicians in the OB-GYN department treated 1,081 in-patients and 9,500 out-patients in 1973. The treatment thus provided included major surgery in 486 cases, minor surgery in 543 cases, and the delivery of 961 babies. Petitioner, as a first and second year resident during the year in issue, recorded patient histories, examined patients, diagnosed illnesses, delivered babies, performed surgeries, and prescribed drugs. Petitioner's work was closely supervised by the hospital's attending physicians who often examined patients and made their own progress notes. In addition, an attending physician was always present when *406 petitioner delivered a baby or performed surgery. An attending physician was not always present or available, however, when petitioner was required to work in the emergency room of the hospital. Petitioner worked on a rotating shift and was required to spend one night out of four at the hospital. During the year in issue petitioner was paid $7,119.57 by the University. The amount of stipend received by a resident depended upon length of service rather than financial need. As such, the amount of petitioner's stipend increased gradually over the four-year period of his residency, reflecting the greater value of petitioner's services as he became more experienced. Pursuant to a contractual agreement with the hospital, petitioner was entitled to receive certain fringe benefits which included a paid vacation, paid holidays, uniforms and uniform laundry service, meals while on duty at the hospital, medical insurance, and malpractice insurance coverage. In return, petitioner agreed, inter alia, to perform the "usual and customary services of a physician." Federal and State income taxes were withheld from the payments received by petitioner from the hospital during 1973. *407 Petitioner, on his 1973 Federal income tax return, excluded $3,600 from gross income as a scholarship or fellowship grant. Respondent, in a statutory notice of deficiency, increased petitioner's income in that amount. OPINION At issue is whether petitioner, a medical resident, may exclude $3,600 of the amount he received in 1973 from Loma Linda University as a scholarship or fellowship grant. Section 117 provides an exclusion from gross income for amounts received as a scholarship or fellowship grant. In the case of a recipient who is not a candidate for a degree, the amount of the exclusion is limited $300to per month. The question of whether a particular amount qualifies for the exclusion provided by the statute depends upon the grantor's primary purpose in making the payments. If such purpose was to compensate the recipient for services rendered, which were subject to the supervision of the grantor, the exclusion does not apply. Woddail v. Commissioner,321 F.2d 721 (10th Cir. 1963); Weinberg v. Commissioner,64 T.C. 771 (1975); sec. 1.117-4(c)(1), Income Tax Regs. See Bingler v. Johnson,394 U.S. 741 (1969). Based *408 on the facts in this case, we hold that the amounts paid to petitioner in 1973 represented compensation for his services to the hospital. As set out in our findings of fact, petitioner, a resident in obstetrics and gynecology, performed significant and substantial services for the hospital such as surgery and the delivery of babies. Petitioner emphasizes that many of the functions he performed for the hospital were duplicated by an attending physician and were therefore dispensable. While we do not doubt that petitioner had limited responsibilities, the mere fact that his work was closely supervised or that patients were independently examined by an attending physician in some cases does not render the payments to petitioner noncompensatory. Brubakken v. Commissioner,67 T.C. 249 (1976); Fisher v. Commissioner,56 T.C. 1201 (1971). A further indication of the compensatory nature of the payments received by petitioner is the similarity between such payments and those usually associated with an employment relationship. Specifically, the stipend received by petitioner was dependent upon his length of service rather than financial needs. See *409 Jamieson v. Commissioner,51 T.C. 635 (1969). The University considered the stipend to be compensation for with-holding purposes. In addition, the fringe benefits received by petitioner during his residency were similar to those customarily accorded employees. See Woddail v. Commissioner,supra;Reese v. Commissioner,45 T.C. 407 (1966), affd. per curiam 373 F.2d 742 (4th Cir. 1967). Finally, we find petitioner's reliance on Leathers v. United States,471 F.2d 856 (8th Cir. 1972), in support of his position to be misplaced. In Leathers the Circuit Court merely declined to reverse a jury verdict with regard to the primary purpose of the payments made to that taxpayer. In the present case the record indicates that the payments were intended to be compensatory. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, and in force during the year in issue.↩